Caroline B. FERENZ, Plaintiff,

v.

Oveta Culp HOBBY, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 11820.

United States District Court
W. D. Pennsylvania.

Oct. 4, 1955.

Cauley & Birsic, Pittsburgh, Pa., for plaintiff.

John W. McIlvaine, U. S. Atty., for defendant.

SORG, District Judge.

This is an appeal from final administrative decision of the Social Security Administration denying the claimant, Caroline B. Ferenz, widow's insurance benefits and a lump sum death payment, based on the wage record of Joseph Ferenz, deceased husband of the claimant, under the provisions of the Social Security Act, 42 U.S.C.A. § 402.

The denial is based solely on the conclusion of the learned Referee of the Social Security Administration, after hearing, that the claimant, widow of the deceased wage earner, was not living with him at the time of his death within the meaning of the Social Security Act.

As found by the learned Referee:

The claimant (plaintiff) and the wage earner were married on March 3, 1908. The marriage remained in full force and effect until the death of the wage earner on July 5, 1951. Until 1928 the claimant and wage earner lived together as husband and wife. There was a separation in 1928, and early in 1929 there was a temporary reconciliation which lasted for about a month. In the Spring of 1929 the claimant and wage earner who were then living in Duquesne, Pennsylvania, separated and did not live together in the same household thereafter. Within a year or two after the separation the wage earner commenced to live in a meretricious relationship with a woman known as Agnes Smith. This woman had first been married to a man by the name of Smith. After his death she married a man by the name of Oates. According to her testimony Mr. Oates was still living and they had not been divorced. She prefers to be known as Mrs. Smith. For some years the wage earner and Mrs. Smith lived together in a house owned by the wage earner. Later, they moved to a house owned by Mrs. Smith. They lived in this house for ten or fifteen years and the wage earner resided there on June 26, 1951, when he was taken to the Magee Hospital in Pittsburgh. The wage earner was in the hospital from June 26, 1951, until July 5, 1951, at which time he died.

After the claimant and wage earner separated in 1929, she obtained employment as a domestic worker in Pittsburgh. She returned to Duquesne sometime in 1948. After she returned to Duquesne the wage earner visited her on occasions and requested that she return to live with him. She expressed her willingness to return but only on condition that he terminate his relationship with the other woman and that the latter not be a member of the household. On none of these visits did the wage earner consent to this condition. The last of such visits by the wage earner was about two weeks before he was taken to the hospital.

The wage earner was taken to the hospital by ambulance on June 26, 1951. His daughter, Margaret D. Kasten, visited him on that day. According to her testimony the wage earner made some statements indicating regret for the type of life he had been leading and he "wondered if he got out of the hospital him and Mom could ever get together if she would be satisfied to go back." Her reply to her father was "I thought she would." Mrs. Kasten reported to her mother that her father said, "He was sorry, and if he got back out they would go back together again." Mrs. Kasten testified that her mother said that "if he wasn't with the other woman she would go back". The claimant testified that she told Mrs. Kasten that she would be willing to go back with the wage earner "if he got parted from this other woman."

The claimant stated that she had been advised that her husband told Mrs. Smith that he would not be returning to her. The claimant did not visit the wage earner while he was in the hospital during his last illness and the alleged agreement to live together was made through conversations that the claimant and wage earner had with Mrs. Kasten. The claimant refrained from visiting her husband at the hospital because she did not want any unpleasant

incident which might have been occasioned if she met Mrs. Smith there.

Mrs. Smith visited the wage earner at the hospital every day while he was there. She was there at all times during visiting hours and she was with the wage earner at the time he died. The wage earner did not tell Mrs. Smith that their relationship would be terminated, or that they would not continue to live together or that he and his wife were going to live together again.

There never was any court order by which the wage earner was ordered to contribute to the support of his wife. There is no evidence that he contributed to her support. For a number of years the wage earner had been paying the premiums on four industrial life insurance policies on the life of the claimant. The total weekly premiums on these policies amounted to less than one dollar. The wage earner told the claimant that if anything happened to her the proceeds from these policies would take care of her burial expenses.

After the death of the wage earner his family made arrangements for his funeral and burial. He was of the Catholic faith but had not adhered to many of the precepts of his religion for some time prior to his death. Last rites were held according to the Catholic faith and he was interred in a Catholic cemetery.

From this evidence the learned Referee concluded, "that at the time of the wage earner's death he was not under court order to contribute to the support of his wife, that he did not contribute to her support, that she was not living with the wage earner at the time of his death, that the claimant is not entitled to the benefits for which she applied."

The record also discloses that, when the wage earner asked his daughter if the claimant would resume living with him, he knew the attitude of the claimant and knew the condition under which she would return. The daughter inquired of her, was told she would on condition that the wage earner cease his meretricious relationship with the other woman, and conveyed the message to her father. The father expressed satisfaction, replying "That's good", and both mother and daughter testified that it was their understanding that the claimant and the wage earner were going to resume living together.

The Social Security Act, Sec. 402(e) (1) of 42 U.S.C.A., provides:

"The widow * * * of an individual who died a fully insured individual after 1939, if such widow—

"(A) Has not remarried,

"(B) has attained retirement age,

"(C) has filed application for * * * benefits * * *,

"(D) was living with such individual at the time of his death, and

"(E) is not entitled to old-age insurance benefits * * * shall be entitled to a widow's insurance benefit[s] * * *."

Claimant has clearly met the requirements of A, B, C, and D of Sec. 402(e) (1). The sole question in this case is whether she is in compliance with the provisions of subparagraph D.

In 1950, Congress broadened the definition of "widow" and the term "living with". Sec. 416(h) of 42 U.S.C.A. provides as follows:

"(1) In determining whether an applicant is the wife, husband, widow, widower, child, or parent of a fully insured or currently insured individual for purposes of this subchapter, the Administrator shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a wife, hus-

band, widow, widower, child, or parent shall be deemed such.

"(2) A wife shall be deemed to be living with her husband if they are both members of the same household, or if she is receiving regular contributions from him toward her support, or he has been ordered by any court to contribute to her support; and a widow shall be deemed to have been living with her husband at the time of his death if they were both members of the same household on the date of his death, or she was receiving regular contributions from him toward her support on such date, or he had been ordered by any court to contribute to her support."

It is a matter of record that the claimant shared as widow in the estate of the deceased wage earner by decree of the Orphans Court of Allegheny County, Pennsylvania, No. 3473 of 1951.

The phrase "living with" in Sec. 402(e) (1) of the Social Security Act should be broadly construed to accomplish the intent of Congress. Richards v. Social Security Administration, D.C. Mass.1948, 76 F.Supp. 12.

In the ordinary sense, the claimant and wage earner were not actually "living with" each other at the time of the wage earner's death. However, to give effect to the intent of Congress in liberalizing the definition of "living with" for purposes of the Social Security Act, they did become members of the same household by virtue of their reconciliation. Such a reconciliation was effected and an agreement reached through the efforts of their daughter, at the wage earner's request and at a time when his death was not expected. Actual cohabitation was prevented only by the wage earner's confinement in the hospital and his subsequent death. The wage earner and the claimant were "living with" each other for the intent and purposes of the Social Security Act.

The decision of the Social Security Administration is reversed. Plaintiff's motion for summary judgment is granted; defendant's motions are denied.