Caroline B. FERENZ

v.

Marion B. FOLSOM, Secretary of Health,
Education and Welfare,
Appellant.

No. 11817.

United States Court of Appeals
Third Circuit.

Argued May 24, 1956.

Decided Sept. 10, 1956.
Rehearing Denied Oct. 19, 1956.

Melvin Richter, Washington, D. C.
(Warren E. Burger, Asst. Atty. Gen., D.
Malcolm Anderson, Jr., U. S. Atty., Pitts-
burgh, Pa., Samuel D. Slade, Julian H.
Singman, Attys., Dept. of Justice, Wash-
ington, D. C., on the brief), for appellant.

Thomas H. Cauley, Pittsburgh, Pa., for appellee.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

This is an appeal by the Secretary of Health, Education and Welfare ("Secretary") [1] from a judgment of the District Court for the Western District of Pennsylvania reversing its disallowance of claims of Caroline B. Ferenz, the widow of Joseph Ferenz, under the provisions of Title II (Federal Old Age and Survivors Insurance Benefits) of the Social Security Act, as amended.[2]

The widow's claims were denied by the Bureau of Old Age and Survivors Insurance of the Social Security Administration on the ground that she was not living with her husband at the time of his death as required by the statute. A hearing was held before an agency referee to review the initial decision of the Bureau. The referee found, after hearing the widow's witnesses, that she had not been "living with" her husband at the time of his death as required by the Act and accordingly was not entitled to benefits. The widow's appeal to the Appeals Council of the Department of Health, Education and Welfare was de-

nied and she brought suit in the court below to review the administrator's determination under the provisions of Section 205(g) of the Act.[3]

The factual findings of the referee are set forth in the opinion of the District Court [4] and may be summarized as follows:

Mrs. Ferenz and her husband, Joseph Ferenz, were married in 1908 and remained married until Ferenz' death on July 5, 1951. In 1929 Mrs. Ferenz and her husband "separated and did not live together in the same household thereafter". Soon after this separation, Ferenz began living with a woman known as Agnes Smith who was married to a man named Oates. On several occasions Ferenz sought to persuade his estranged wife to rejoin him, but each time she refused to do so unless he left Mrs. Smith; Ferenz steadfastly refused to consent to this condition and he and Mrs. Smith lived together until he became ill and was hospitalized on June 26, 1951. At that time they were living in a house owned by Mrs. Smith. Ferenz died in the hospital a few days after admission.

On the day he was taken to the hospital he was visited by his daughter, Margaret D. Kasten. According to her testimony he then indicated regret for the life he

---

1. All functions of the Federal Security Administrator were transferred to the Secretary of Health, Education and Welfare by Section 5 of the 1953 Reorganization Plan No. 1, effective April 11, 1953, 18 Fed.Reg. 2053, 67 Stat. 631, 5 U.S. C.A. following section 133z–15.

2. One claim was for widow's monthly insurance benefits under the provisions of Sec. 202(e)(1) of the Act, 42 U.S.C.A. § 402(e)(1) and the other for lump-sum death payment under Sec. 202(i), 42 U.S. C.A. § 402(i). The full lump-sum death payment was granted the widow's daughter as executrix of the estate of her father.

Section 202(e)(1) of the Social Security Act, 49 Stat. 622 et seq. 402(e)(1) provides in part:

"The widow (as defined in section 416 (c) of this title) of an individual who died a fully insured individual after 1939, if such widow—

'·* * * * *

"(D) was living with such individual at the time of his death, * * *

* * * * *

"* * * shall be entitled to a widow's insurance benefit for each month * *."

Section 202(i) of the Act, 42 U.S.C.A. § 402(i) provides in part:

"Upon the death, after August 1950, of an individual who died a fully or currently insured individual, an amount equal to three times such individual's primary insurance amount shall be paid in a lump sum to the person, if any, determined by the Administrator to be the widow or widower of the deceased and to have been living with the deceased at the time of death. * * *"

3. 42 U.S.C.A. § 405(g).

4. Ferenz v. Hobby, D.C.W.D.Pa.1955, 138 F.Supp. 446.

had been leading and expressed concern as to whether he and his wife might be reconciled. Mrs. Kasten told her father she thought such a reconciliation could take place. Mrs. Kasten notified her mother of her father's concern and was informed by her mother that she would be willing to go back with him "if he got parted from this other woman."

Mrs. Ferenz never visited her husband in the hospital. She refrained from doing so because "she did not want any unpleasant incident which might have been occasioned if she met Mrs. Smith there." Mrs. Smith visited Ferenz every day that he was in the hospital. She was there at all times during visiting hours and was with him at the time he died. Ferenz mentioned nothing to her of any impending termination of their relationship nor of any desire on his part to reconcile with his wife.

No court order was ever entered requiring Ferenz to support his wife and there is no evidence in the record that he ever contributed to her support.

Notwithstanding its recognition of these facts, as found by the referee, the District Court [138 F.Supp. 449] reversed the administrative ruling on the ground that, because "The phrase 'living with' in Sec. 402(e) (1) of the Social Security Act should be broadly construed to accomplish the intent of Congress" and although "In the ordinary sense, the claimant and wage earner were not actually 'living with' each other at the time of the wage earner's death", since a "reconciliation was effected" the "wage earner and the claimant were 'living with' each other for the intent and purposes of the Social Security Act."

The Secretary on this appeal contends (1) there was no justification, on the evidence and findings before it for the District Court's conclusion that there had been a "reconciliation" and (2) even if there had been a reconciliation it would not be sufficient to qualify Mrs. Ferenz for widow's benefits.

On the score of the first contention the Secretary urges that the District Court failed to give proper weight to its inferences and conclusions and that not only are its actual findings final if supported by substantial evidence, but the inferences and conclusions drawn from the evidence are entitled to the same weight. He points to the fact that the District Court's finding that there "had been a reconciliation" was contrary to the conclusion reached by the referee. The latter had found:

"The expressions of the wage earner regarding the resumption of living together and the surrounding circumstances raise considerable doubt in the mind of the referee that the wage earner honestly intended to resume living together with the claimant. According to the testimony the wage earner stated, in substance, that if he got out of the hospital he and the claimant would live together again. The claimant may take the position that the wage earner, by offering to resume living together with her, accepted the condition she had made under which she would live with him. That is, that he would terminate his relationship with Mrs. Smith. The fact is, and the referee so finds, that the wage earner to the time of his death did not terminate this relationship. *The condition under which the claimant and wage earner might have become members of the same household was never met.* The wage earner died in the hospital and his meretricious affair with Mrs. Smith ended only with his death." (Emphasis supplied.)

The Secretary's first contention brings into sharp focus the jurisdiction of the District Court and the scope of its review of administrative findings such as were made in this case.

Section 205(g) of the Act, 42 U.S,C.A. § 405(g) provides:

"Any individual, after any final decision of the Administrator made after a hearing to which he was a party * * * may obtain a review of such decision by a civil action

* * *. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides * * *. As part of its answer the Administrator shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Administrator, with or without remanding the cause for a rehearing. *The findings of the Administrator as to any fact, if supported by substantial evidence, shall be conclusive * * *.*" (Emphasis supplied.)

The reviewing authority of the District Court is not unlimited, for it may not substitute its inferences for those of the referee which are supported by substantial evidence. Livingstone v. Folsom, 3 Cir., 1956, 234 F.2d 75; Thompson v. Social Security Board, 1946, 81 U.S.App.D.C. 27, 154 F.2d 204; United States v. Lalone, 9 Cir., 1945, 152 F.2d 43; Walker v. Altmeyer, 2 Cir., 1943, 137 F.2d 531; Social Security Board v. Warren, 8 Cir., 1944, 142 F.2d 974; McGrew v. Hobby, D.C.Kan.1955, 129 F.Supp. 627; Hemmerle v. Hobby, D.C.N.J.1953, 114 F.Supp. 16; Holland v. Altmeyer, D.C.Minn.1945, 60 F.Supp. 954. Cf. Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; and National Labor Relations Board v. Link-Belt Co., 1941, 311 U.S. 584, 596–597, 61 S.Ct. 358, 85 L.Ed. 368. In finding that there had been a reconciliation the District Court ignored the referee's inferences without finding that they were not supported by substantial evidence. It is well-settled that we must reverse the order of the District Court if upon review of the record as a whole we find that the referee's findings were supported by substantial evidence.

As the Supreme Court stated in National Labor Relations Board v. Link-Belt Co., supra, 311 U.S. at page 597, 61 S.Ct. at page 365:

" 'Not by accident, but in line with a general policy, Congress has deemed it wise to entrust the finding of facts to these specialized agencies. It is essential that courts regard this division of responsibility which Congress as a matter of policy has embodied in the very statute from which the Court of Appeals derived its jurisdiction to act.' Congress entrusted the Board, not the courts, with the power to draw inferences from the facts. * * * The Board, like other expert agencies dealing with specialized fields * * * has the function of appraising conflicting and circumstantial evidence, and the weight and credibility of testimony."

Application of these guides to the referee's findings upon a review of the record leads us to conclude that there was substantial evidence to support them. While conflicting evidence may produce conflicting inferences, we cannot say that the referee's view of the situation is without support. The record discloses substantial evidence for the finding that Ferenz had not accepted the sole condition upon which Mrs. Ferenz offered to reconcile with him. The District Court exceeded the authority granted by the Act in substituting its own inferences for those it was bound to accept. Walker v. Altmeyer, supra.

The referee, who heard the testimony and found the facts, concluded that Mrs. Ferenz was not "living with" her husband at the time of his death within the meaning of that term used in the Act. The Secretary, who was entrusted by Congress with the task of administering the Act, of interpreting its provisions, and of making "decisions as to the rights of any individual applying for a payment" (Section 205(b)) under the Act, approved that conclusion. Since there was a "reasonable basis in law" for this conclusion and " 'warrant in the record' " for it, the case should have gone no further and the decision of the Secretary

should have been affirmed. National Labor Relations Board v. Hearst Publications, 1944, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170.

In view of our conclusion that there was substantial evidence to support the findings of the referee, we need not decide whether a mere "reconciliation" had it taken place would have been sufficient to qualify the claimant for benefits under the Social Security Act.

For the reasons stated the judgment of the District Court will be reversed and the cause remanded with instructions to enter a judgment affirming the decision of the Social Security Administration.

McLAUGHLIN, Circuit Judge (dissenting).

The majority opinion reverses the judgment of the district court because "The referee, who heard the testimony and found the facts, concluded that Mrs. Ferenz was not 'living with' her husband at the time of his death within the meaning of that term used in the Act."

The referee's decision was based on his conclusion, as emphasized in the court opinion, that *"The condition under which the claimant and wage earner might have become members of the same household was never met."* The referee never said that even if the condition insisted on by the wife had been met, the "living with" requirements of the Act would not have been fulfilled. The referee did say that an expression by the wage earner of an intent to resume living together with his wife would not have been enough under the circumstances. But there was far more than that before him. Actually there was a complete agreement of reconciliation between the husband and wife with cohabitation awaiting only the release of Ferenz from the hospital.

The sequence of events was that the Ferenz couple had been married twenty-one years when the husband took up with a woman called Smith, who was really a Mrs. Oates and married. Mr. and Mrs. Ferenz had always lived in Duquesne, Pennsylvania. After the separation Mrs. Ferenz went to work in Pittsburgh. She came back to Duquesne in 1948. From that time until June, 1951, about two weeks prior to Ferenz entering the hospital, he visited his wife once every week or once every two weeks in an effort to persuade her to return to him. She was willing but insisted he give up Mrs. Smith. During his first day in the hospital he told his daughter he regretted the type of life he had been leading and evinced a strong desire to rejoin his wife. Advised of this by her daughter the mother agreed to take him back if he would give up the other woman. So far the referee's statement of facts, as incorporated into the court opinion, is in accord. What the referee never mentioned and which is not alluded to by the majority, is that, by the uncontradicted evidence, Ferenz accepted his wife's condition. This is indicated in the district court opinion as follows: "The record also discloses that, when the wage earner asked his daughter if the claimant would resume living with him, he knew the attitude of the claimant and knew the condition under which she would return. The daughter inquired of her, was told she would on condition that the wage earner cease his meretricious relationship with the other woman, and conveyed the message to her father. The father expressed satisfaction, replying 'That's good', and both mother and daughter testified that it was their understanding that the claimant and the wage earner were going to resume living together." [138 F.Supp. 448.]

The little other affirmative evidence points unmistakably to a full meeting of minds between the parties. Mrs. Ferenz had accepted her husband's proposal conditionally and he had consented to her terms. So the condition had been met. There was reconciliation in fact. There was nothing more to be done pending the discharge of Ferenz from the hospital. Mrs. Ferenz did not visit her husband at the hospital because Mrs. Smith was around and Mrs. Ferenz sought to avoid

a distressing spectacle in front of her sick husband.[1]

The above evidence, the most significant in the case, cannot be ignored if this appeal is to be decided on the proposition that the administrative " * * * *judgment was based upon conclusions reasonably reached upon due consideration of all relevant issues presented after parties in interest had been given a fair hearing or a fair opportunity to be heard upon the facts and the applicable law.*" (Emphasis supplied.) Walker v. Altmeyer, 2 Cir., 1943, 137 F.2d 531, 533–534; Gray v. Powell, 1941, 314 U.S. 402, 411, 62 S. Ct. 326, 86 L.Ed. 301. Even if the grievously sick man's informal approval of his wife's conditioned acceptance of his proposal could reasonably be questioned because it is not a legally phrased formal acceptance of the condition, *at least it must be considered by the referee.* This court should not countenance a final disposal of the widow's rights under the remedial statute involved when her primary contention, evidentially supported, that there was a complete agreement between herself and her husband which brings her within the "living together" provisions of the Act, has never been passed on. That it does, can be argued later at length. Here and now the important thing is to give the claimant a fair trial on her claim.

1. The negative circumstances that Ferenz did not notify Mrs. Smith of his decision and that she continued to visit him until he died, are relied on heavily by the majority (following the referee's decision) for holding that there was a continuation of that relationship and therefore never reaching the question of whether there was a firm reconciliation which satisfied the "living with" requirement of the Act. It might be well to have in mind that "such a finding is but a legal inference from other facts". In Matter of Pioch, 3 Cir., 235 F.2d 903, 905, and that such inference " 'should reasonably be derived from the basic facts.' " Curtis Company v. Commissioner, 3 Cir., 1956, 232 F.2d 167, 168.

Of course Ferenz did not tell Mrs. Smith he had reconciled with his wife.

He had finally made a decision which he had avoided for nine years. As a result he had gotten himself straightened out. However, he was no stalwart. Weak morally, desperately ill physically, it is against ordinary experience for him to have faced up to that awful scene with Mrs. Smith at that time. Perhaps quietly going home as soon as he was able was as good a solution as any for both him and Mrs. Smith. Maybe he had no solution, but one thing sure, as his daughter said, he had some fear of Mrs. Smith and dreaded a row there in his hospital room. It is not denied that he told his daughter, as she testified, "Whatever you do Sis, don't have any run ins with this woman. * * * Don't stand around because she might come in any minute now."