Dorothy M. KEC, Plaintiff,

v.

Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Defendant.

No. 36446.

United States District Court
N. D. Ohio, E. D.

Oct. 3, 1961.

Eugene Bleiweiss, Cleveland, Ohio, for plaintiff.

Russell E. Ake, U. S. Atty., and Burt W. Griffin, Asst. U. S. Atty., Cleveland, Ohio, for defendant.

KALBFLEISCH, District Judge.

This civil action was filed under 42 U.S.C.A. § 405(g), to obtain a judicial review of a decision by the Secretary of Health, Education and Welfare denying plaintiff's application filed in May 1957 to establish a so-called "disability freeze." Defendant answered and then filed a motion for summary judgment. As required by statute, a certified copy of the transcript of the hearing and of the evidence, upon which the hearing examiner's decision was based, was filed with the answer.

Plaintiff was born in 1921 and was employed in a retail store in Ashtabula, Ohio, from 1939 to August 1952, according to her application (Ex. 1; Tr. 38), although the Earnings Record of plaintiff indicates she was covered only during the first three quarters of 1951 and the last quarter of 1952 (Ex. 2; Tr. 40).

In August 1952, plaintiff became ill and was advised by her physician not to work (Ex. 1; Tr. 36). At that time, plaintiff was confined to bed at her home for six weeks (Tr. 25), and in December 1952 she was hospitalized for about twenty-six days with what she described as "a severe heart attack" (Ex. 1; Tr. 39). The records of the Ashtabula General Hospital state that plaintiff was under treatment at that time for "Severe, continuous, unbearable pain under breast bone, exaggerated by effort or motion." (Ex. 7; Tr. 47.) The diagnosis given was "Infarction of posterior wall of the heart; Duodenal ulcer." The record further discloses that X-rays taken at that time suggested "hypertensive cardio-vascular disease but otherwise the heart and aortic shadows are not remarkable. There is no evidence of cardiac decompensation." (Tr. 48.)

In the medical report attached to plaintiff's application (Ex. 3; Tr. 41) her per-

sonal physician, William Millberg, M. D., of Ashtabula, Ohio, stated that her present illness first occurred in August 1952 and that she became unable to work at that time. Plaintiff's symptoms were listed by Dr. Millberg as "Anginal attacks, palpitation, dyspnea, headaches and dizziness. Irregularly has edema of feet, ankles and legs. Ekg's show coronary disease." As of the date of the report, May 6, 1957, plaintiff was ambulatory. Dr. Millberg's diagnosis is "Coronary artery disease; hypertension; obesity." Dr. Millberg's report further states that plaintiff is receiving nitroglycerine, digitalis and serpacil; that he sees the plaintiff for treatment every two weeks; that her condition is static; that no improvement can be expected; and that he has advised her not to work.

On January 7, 1958, at the request of the Bureau of Vocational Rehabilitation, plaintiff was examined by John W. Davis, M. D., of Painesville, Ohio. His report, erroneously dated 1957 (Ex. 5; Tr. 44, 45), states that a conventional twelve-lead electrocardiogram taken with the patient supine "strikes me as being quite within normal limits despite the presence of a small Q wave in leads III and aVf." Dr. Davis concluded that plaintiff "has definite organic heart disease; on a statistical basis, I am forced to consider this as rheumatic aortic insufficiency but there are obvious inconsistencies in this and she may well have a congenital pulmonic lesion" but that he was "loath to accept a diagnosis of coronary heart disease in so young a female without some suggestion of the existence of a process other than atherosclerosis." No opinion was given as to plaintiff's ability to engage in a substantial gainful activity.

On May 3, 1958, plaintiff's claim was disallowed (Ex. 8; Tr. 49).

In a letter to the Social Security Administration, dated June 3, 1958, concerning the plaintiff (Ex. 6; Tr. 46), Dr. Millberg stated:

"As her physician I can say that she will never be able to follow any gainful occupation. She has been a cardiac case for the past seven years and under my care. She can go along at times without a great deal of difficulty but she is constantly taking medicine. She has periodic attacks of severe angina and has to be bed confined. For the past few years she has been seen at two week intervals and is taking medication.

"Knowing her case as I do, I feel sure that denial of her request is unjust and should be reviewed again."

Plaintiff's application was reconsidered and again denied. A letter dated August 19, 1958, from C. C. Hall, Chief, Reconsideration Branch of the Department, to plaintiff (Ex. 9; Tr. 50) stated:

"The medical evidence submitted shows that your health has been impaired due to your heart condition. Although your condition may cause some pain and discomfort, and interfere with the performance of work requiring strenuous physical effort, it has not so severely affected your over-all ability as to make you unable to do any type of substantial gainful work.

"After a careful review of all the evidence, we find that the determination in your case was proper and in accordance with the law. Therefore, the denial of your application for a disability freeze remains unchanged."

Dr. Millberg again wrote a letter to the Department (Ex. 10; Tr. 52) stating that in his judgment plaintiff "will never again be able to follow any gainful occupation."

In October 1959, a "personal physician," (Tr. 10) Charles M. Suttles, M. D., of Ashtabula, Ohio, took an electrocardiogram of plaintiff. He concluded that "the conduction intervals are within normal limits" but that the "changes in leads 2, 3 and AVF, as indicated above, are very suspicious of an old posterior myocardial infarction. Otherwise the electrocardiogram is within normal lim-

its and there is no evidence of any acute or recent myocardial process." The Suttles report gave no opinion as to plaintiff's ability to engage in substantial gainful activity.

On December 23, 1959, an additional examination of plaintiff was made at the Government's request, the results of which, in the opinion of the Hearing Examiner, "would appear to provide an ample basis for the adverse determination" (Tr. 9). This examination was by S. M. Sancetta, M. D., of City Hospital, Cleveland, Ohio, and, on the basis of his electrocardiogram and chest fluoroscopy, he stated that it was his impression that plaintiff had "Rheumatic heart disease, probably inactive; aortic insufficiency, adynamic, RSR, no enlargement." The electrocardiogram was given while plaintiff was resting, and also under exercise which was "discontinued after 10 double steps because of breathlessness and sharp precordial pain: no significant changes." Dr. Sancetta stated in his report that "Although it is risky to pass judgment on what transpired 7 years ago, I seriously doubt that this lady has coronary disease and that she really had a myocardial infarction 7 years ago. I wonder if in retrospect she did not actually have atypical acute rheumatic fever, possibly with pericarditis." (Tr. 53.)

Pursuant to Dr. Sancetta's recommendation, he was furnished with copies of plaintiff's electrocardiogram taken at Ashtabula Hospital in December 1952. He concluded, in a report dated January 12, 1960 (Ex. 12, Tr. 59) that he could not make "a diagnosis of acute myocardial infarction in 1952, nor of coronary artery disease at present. The aortic insufficiency described on 23 Dec 59 is however unquestionable, although it has not resulted either in ECG evidence of hypertrophy or enlargement of the left ventricle clinically and fluoroscopically." The Sancetta reports are devoid of any opinion as to plaintiff's ability to engage in substantial gainful activity.

At the hearing, plaintiff testified that she suffered from headaches, dizziness, spots before her eyes, ringing in her ears (Tr. 28), swollen legs and ankles (Tr. 29), chest and back pains (Tr. 30), pains radiating down her arms and neck (Tr. 32), and that her arms get numb from doing work with her hands, such as embroidering (Tr. 31). She testified that she does little housework and that her husband does the heavy work. (Tr. 34.)

Plaintiff was not represented by counsel at the hearing and she was the only person to testify (other than a neighbor, whose testimony was not significant).

Under the review provisions of 42 U.S.C.A. § 405(g), the Court is limited to a determination of whether the Secretary's findings are supported by substantial evidence. The Court may, on the basis of the record, enter judgment affirming, modifying or reversing the Secretary's decision, with or without remanding the case for a rehearing. A hearing *de novo* may not be made on the record and the District Court may not substitute its inferences for those of the Hearing Examiner which are supported by substantial evidence. Ferenz v. Folsom, 237 F.2d 46, 49 (C.A.3d, 1956).

Plaintiff claims that she is and has been unable to engage in any substantial gainful activity since August 1952 (Complaint, par. 4) and that she is entitled to a period of disability from that date, the principal effect of which will be to prevent the Social Security benefits which she or her beneficiaries may ultimately receive from being reduced because of her not working during such period. The statute, 42 U.S.C.A. § 416(i) (1), defines disability as meaning " * * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or to be of long-continued and indefinite duration * * *." 42 U.S.C.A. § 416(i) (2) defines period of disability as "a continuous period of not

less than six full calendar months \* \* during which an individual was under a disability (as defined in paragraph (1) of this subsection)."

In denying plaintiff's application for a finding that she was disabled, the Secretary made no reference to any particular period of time since August 1952. Therefore, it is assumed that the defendant's position is that plaintiff was at no time since that date unable to engage in any substantial gainful activity for a continuous period of not less than six months.

Defendant states that where there is a conflict of medical opinions the Secretary, not the Court, must resolve the conflict (Brief, p. 8); that Drs. Davis, Sancetta and Suttles were "specialists" whereas Dr. Millberg was "apparently a general practitioner;" and that the Hearing Examiner was obliged to evaluate the qualifications of the doctors (Brief, p. 10). Defendant also states that "the Referee not only may but probably should resolve conflicting evidence against the claimant" and that the "Secretary used that prerogative in this case." (Brief, p. 9.) However, there is no evidence in the record as to the qualifications or specialties of any of the physicians whose reports were in evidence and none testified at the hearing.

■■ The Court is of the opinion that there is no substantial evidence in the record to support the Hearing Examiner's conclusion that "no impairment has been demonstrated of sufficient severity to preclude engagement in any substantial gainful activity (Tr. 10). There is a difference of opinion among Drs. Millberg, Sancetta, Suttles and Davis as to the precise physical condition of plaintiff's heart, but all agree that something is wrong with it. There is no evidence as to the relative severity of the various possible heart ailments from which plaintiff may be suffering or how they might affect her ability to work regularly. Dr. Millberg, plaintiff's personal physician for many years, says unequivocally that because of her heart condition she is totally disabled from pursuing any gainful employment. While Dr. Sancetta doubts plaintiff's disability, he "emphatically" could not make an unequivocal statement to that effect (Tr. 53). On the question of disability, Drs. Davis and Suttles say nothing. Thus, the only evidence before the Hearing Examiner on this question was that of plaintiff and Dr. Millberg to the effect that plaintiff was unable to engage in any substantial gainful activity because of her heart condition. While it is true that mere pain and discomfort, even if fairly constant, are not necessarily disabling, the pangs of heart disease, whatever its exact nature, are not to be ignored even by the most courageous individuals. As noted in the Report of the Senate Finance Committee on the 1954 amendments to the Social Security Act, a person does not meet the statute's definition of disability "if he can, by reasonable effort *and with safety to himself*, achieve recovery or substantial reduction of the symptoms of his condition (Emphasis added)." (Senate Report No. 1987, 83d Cong., 2d Sess., pp. 20 and 21, U.S.Code Cong. and Adm.News 1954, p. 3730).

■ The case will be remanded to the Secretary with instructions to either grant plaintiff's application for a disability freeze beginning in August 1952, on the basis of the evidence now in the record, or to conduct a rehearing and take evidence with respect to the question of whether by reason of plaintiff's heart condition she is, or has been, unable to engage in substantial gainful activity.