Frank J. SERAFIN, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, United States of America, Defendant.

Civ. No. 8839.

United States District Court
M. D. Pennsylvania.

Dec. 30, 1965.

Mario E. Cipriani, Nanticoke, Pa., for plaintiff.

Bernard J. Brown, U. S. Atty., Scranton, Pa., for defendant.

NEALON, District Judge.

This is an action under Section 205(g) of the Social Security Act, as amended, to review a final decision of the Secretary of Health, Education and Welfare denying plaintiff's application for disability insurance benefits.

The pleadings reveal that plaintiff filed an application for disability insurance benefits on February 6, 1963, which was denied by the Social Security Administration, and the claimant filed a timely request for a hearing on July 6, 1964. The hearing was held on September 24, 1964, before the Hearing Examiner. The Hearing Examiner, in a decision dated October 12, 1964, also denied plaintiff's claim for disability benefits. Plaintiff filed a request for review, but this was denied by the Appeals Council and this denial became the final Administrative decision on the claim and constitutes the decision of the Secretary. Plaintiff then filed his complaint in this Court, seeking a reversal of the decision, and the defendant has moved for summary judgment. This motion is now before the Court for disposition.

Plaintiff is fifty-five years of age. He commenced work at the age of fourteen when he took a job as a bobbin boy in a silk mill. He later became a spinner and held that job from 1923 to 1928, when he went to work in the mines. He first became a door tender, then a laborer, and qualified as a miner in 1941. In 1950, his place of employment, the West End Coal Company, ceased operations and he then took employment with the Glen Alden Coal Company at Wanamie, Newport Township, Pennsylvania. Plaintiff was employed at the Wanamie Colliery until 1960. On December 5, 1960, a mine accident occurred and plaintiff suffered injuries to his eyes and legs. Plaintiff's education is limited to the completion of the seventh grade of elementary school. The applicable Statute requires that the claimant prove he has a disability, i. e., that he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. 42 U.S.C.A. § 423(c) (2).

Dr. J. P. Chollak, plaintiff's physician, provided a diagnosis of his medical con-

dition as anthracosilicosis, Stage II, with emphysema and a marked impairment of vision due to severe perforation of the right cornea, and concluded that no exertion was permitted and that plaintiff was limited to sedentary activity. Dr. Angelo L. Luchi, a specialist in Internal Medicine, diagnosed plaintiff's condition as anthracosilicosis, Stage II, pulmonary emphysema (moderate), and post-traumatic fixed pupil of the right eye. Dr. Edward P. Swartz, an Internist retained at Government expense, likewise diagnosed plaintiff's condition as anthracosilicosis, Stage II, although he states that claimant's oxygen tension before and after exercise is normal and that his response to exercise is fairly good. Dr. A. J. Abbott, in two medical reports, supplied a diagnosis of:

"1. Wounds, multiple, penetrating with retained foreign bodies, lids, cornea, conjunctive; 2. Wounds, perforating through and through, right eyeball, one temporal to limbus, one nasal to limbus; 3. Probable intra-ocular foreign bodies; 4. Multiple abrasions of cornea; 5. Intra-ocular hemorrhages, vitreous plus hyphema, right eye; 6. Concussion of both ears with multiple hemorrhages in M.T.'s; 7. Defective hearing and Tinnitus due to concussion."

Dr. Stanley Verbit, in his examination, stated in his final diagnosis that:

"Claimant had chronic pulmonary fibrosis and emphysema—asymptomatic."

On January 10, 1963, the plaintiff was adjudged totally disabled and was awarded total disability compensation by the Pennsylvania State Workmen's Compensation Board because of severe pulmonary insufficiency due to second degree anthracosilicosis with emphysema. From the evidence, it is quite obvious that plaintiff suffers a serious physical impairment and is unable to return to his usual employment as a coal miner. He contends that he is unable to perform any work. The record also contains the testimony of Dr. Joseph A. Szuhay, a vocational expert. After analyzing the evidence, the Examiner summed it up:

"Although it is clearly established that the claimant has some impairment to his pulmonary capacity, it is equally clear that this impairment does not reduce him to that status of disability as hereinabove defined by the statute and construed by the courts * * * Due consideration has been given to the report of Dr. Chollak, the claimant's physician. Ventilatory studies performed by Dr. Chollak indicate that the claimant's maximum breathing capacity is reduced to 52% of his predicted normal, as compared with the findings of Dr. Luchi, the impartial internist consultant who found a maximum breathing capacity of 62% of a predicted normal, and Dr. Swartz who found that the claimant's oxygen tension arterial blood before and after exercise was normal. Of greater consideration is the fact that the claimant satisfactorily performed exercise tolerance tests for both Dr. Luchi and Dr. Swartz. * * * The testimony of Dr. Joseph A. Szuhay, based upon the record and his appraisal of the claimant, taking into account the claimant's physical condition, his age, education, experience and skills, that the claimant has the present capacity for engaging in many jobs existing in the American economy and particularly in the Wilkes-Barre–Hazleton area is 'compelling'. The Hearing Examiner finds that the claimant has such capacity for substantial gainful activity."

Accordingly, the Examiner denied plaintiff's application for disability benefits.

 It is true that the Secretary's findings of fact and the reasonable inferences drawn therefrom are conclusive if they are supported by substantial evidence. Ferenz v. Folsom, 237 F.2d 46 (3d Cir. 1956). Substantial evidence, according to the Supreme Court, " * * * means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion \* \* \* and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660 (1939). Nevertheless, Courts must review the entire record to determine if the Secretary's decision is based on substantial evidence. In the present case, the Secretary has recognized that plaintiff suffers a pulmonary impairment and would undoubtedly be unable to engage in the arduous duties of mining coal. However, the Secretary concluded that plaintiff was able to engage in substantial gainful activity. In reaching that conclusion the Secretary must dispose of the specific question posed in Hodgson v. Celebrezze, 312 F.2d 260 (3d Cir. 1963), viz., "(w)hat employment opportunities are there for a man who can do only what applicant can do?" Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available. We must concentrate our attention on this plaintiff with his education and background, his abilities, and his recognized impairments. Farley v. Celebrezze, 315 F.2d 704 (3d Cir. 1963). There must be something tangible establishing what genuine employment opportunities there are for a man with his impairments. Stancavage v. Celebrezze, 323 F.2d 373 (3d Cir. 1963). With these standards to guide us, we will proceed to review and analyze the disputed testimony of Dr. Szuhay, the vocational expert, upon whose testimony the Secretary based his decision and was "compelled" to find that plaintiff is capable of engaging in substantial gainful employment.

The sources for Dr. Szuhay's testimony, in addition to his educational background, were: (1) a review of the Dictionary of Occupational Titles, which dictionary breaks down roughly 40,000 different jobs according to families in which they belong, plus individual descriptions of all duties engaged in by people in the specific jobs. The Dictionary was compiled by the Department of Labor and was a 1955 edition. (2) The Worker Trait Requirements for 4,000 jobs as defined by the Dictionary of Occupational Titles published in 1958 by the United States Department of Labor. (3) The Labor Market Letter published by the Wilkes-Barre/Hazleton Bureau of Employment Security for the State Employment Service released September 23, 1964. (4) An examination of the medical and other exhibits used as evidence in the case, and his personal observation of the plaintiff during the hearing which lasted about three hours.

Using this material, Dr. Szuhay prepared Exhibit 23 prior to the hearing and introduced it at the hearing as part of his testimony. The exhibit shows that he concluded the claimant was best suited for work of "light to moderate or sedentary physical effort which would not aggravate his condition." He concludes that claimant was best suited for jobs that involve *none* of the following factors: (a) very heavy work; (b) industrial hazards; (c) fumes, odors, toxic conditions, dust, and poor ventilation. Dr. Szuhay prepared a "Selected List of Jobs" which plaintiff, in his opinion, could perform, based on the Dictionary of Occupational Titles,[1] e. g., Bag Cutter, Bag Stringer, Buckle Looper II, Egg Candler, Food Tabulator in a Cafeteria, Pants Ripper, Retail Package Wrapper. He states in his prepared memorandum:

> "Realizing that these jobs are at a premium, selected placement in a local industry might be attempted through the Bureau of Vocational Rehabilitation. The unemployment situation in the area is still considered as Group D (an area of substantial and persistent unemployment) \* \* \*."

Dr. Szuhay states that these "selected jobs" are existent in the "American

---

1. This type of evidence was found to be meaningless and conjectural in Stancavage v. Celebrezze (supra).

Economy," but admits he doesn't know how many such jobs are available in the Wilkes-Barre/Hazleton labor market area or how many are available in the State of Pennsylvania. He readily admits that if any such selected jobs are available to the claimant the jobs and job openings are at a premium. "Again, the openings are at a premium, meaning there may not be much turnover, they will not need new employees to fill these jobs." (N.T. p. 88) Dr. Szuhay had made no independent survey to determine the availability of such jobs to claimant outside of reference to a periodical, although he does testify that he contacted the employment services to see if jobs such as these existed and that such jobs did exist in the labor market available to the plaintiff, except he testified that he does not know how many job openings there are in respect to these selected jobs. Dr. Szuhay nevertheless concludes that with some assistance Mr. Serafin *could* engage in some substantial gainful employment, be it light or sedentary. This is the testimony that the Hearing Examiner described as "compelling" and on which he dismissed the plaintiff's claim. It must be remembered that claimant's ability to engage in substantial gainful activity is to be evaluated by his being able to compete with other applicants in an open employment market and certainly is not satisfied by suggesting that placement might be attempted through the Bureau of Vocational Rehabilitation. On the basis of the record as a whole, this conclusion by the vocational expert is pure speculation, and while theoretically plausible, it does not satisfy the rule of realism and reasonableness. Merely citing catalogues which list capsule descriptions of thousands of jobs available to prospective employees is not sufficient. Hanes v. Celebrezze, 337 F.2d 209 (4th Cir. 1964); Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964); Stancavage v. Celebrezze, 323 F.2d 373 (3d Cir. 1963). The plaintiff has severe physical handicaps which are uncontradicted. In the case of Thom-

as v. Celebrezze (supra), the Court stated that:

> "Employers are concerned with substantial capacity, psychological stability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs. It is unrealistic to think that they would hire anyone with the impairments of this claimant." (331 F.2d at 546)

See also, Ray v. Celebrezze, 340 F.2d 556 (4th Cir. 1965).

It is quite enough if plaintiff offers evidence of a serious impairment, his work experience, his inability to do that kind of work any longer, and his lack of particular experience for any other type of job. Once this has been shown, if there are other kinds of work which are available and for which the claimant is suited, it is the defendant's burden to adduce some evidence from which a finding can be made that he can do some type work, *actually*, not *apparently*. Jarvis v. Ribicoff, 312 F.2d 707 (6th Cir. 1963); Thompson v. Celebrezze, 334 F.2d 412 (6th Cir. 1964). Evidence of reasonable employment opportunities should move away from the area of pure theory and conjecture and toward reality. Viewing Dr. Szuhay's testimony as a whole, it falls far short of showing the genuine employment opportunities available to plaintiff and does not meet the legal standard of substantial evidence. See, Massey v. Celebrezze, 345 F.2d 146 (6th Cir. 1965); Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965); Frazier v. Celebrezze, 236 F.Supp. 938 (E.D.S.C.1965); Goodwin v. Celebrezze, 239 F.Supp. 487 (W.D.La. 1965), and Hamlet v. Celebrezze, 238 F.Supp. 676 (E.D.S.C.1965). Moreover, it must be presumed that the best available proof on this has been presented. Stancavage v. Celebrezze (supra).

Therefore, the defendant's motion for summary judgment will be denied; the decision of the Secretary will be reversed, and judgment will be entered for the plaintiff.