**Dallas BRISCOE, Jr., Plaintiff,**

v.

**Elliott L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 4280.**

United States District Court, D. Delaware.

Oct. 16, 1972.

Alfred J. Lindh, Wilmington, Del., for plaintiff.

Norman Levine, U. S. Atty., and Richard Levin, Asst. U. S. Atty., Wilmington, Del., for defendant.

## OPINION

STEEL, District Judge:

Plaintiff, Dallas Briscoe, Jr., has brought an action against Elliott L. Richardson, Secretary of Health, Education & Welfare, under section 205(g) of the Social Security Act, as amended, 42 U.S.C. section 405(g), to review a final decision of the Secretary holding that plaintiff is not entitled to disability insurance benefits and the establishment of a period of disability by reason of a disability as defined in 42 U.S.C. §§ 416(i) and 423. Jurisdiction exists under 42 U.S.C. § 405(g).

In accordance with section 205(g) the Secretary filed, as part of his answer to the complaint, a certified copy of the transcript of the record, including the evidence upon which the decision complained of was based.

Cross motions for summary judgment were filed, each party asserting that no genuine issue of any material fact exists and that he is entitled to judgment as a matter of law.

The defendant concedes that the plaintiff meets the special insured status requirements of the Act through September 30, 1974. Plaintiff must, therefore, establish that his disability began prior to September 24, 1971, the date when the Secretary's decision became final. 42 U.S.C. §§ 423(b) and 416(i)(2)(G).

The term "disability" is defined in section 223 of the Act to mean:

"(d)(1) * * *

(A) inability to enage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; * * *

(B) * * *

(2) For purposes of paragraph (1)(A)—

(A) an individual * * * shall be determined to be under a disability

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(B) * * *

(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(4) * * *

(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

The Hearing Examiner found that plaintiff's medically determinable impairments did not either singly or in combination meet the definition of "disability" as defined in the Act. He found further that the plaintiff had the residual functional physical capacity and educational and vocational background to transfer into other specified job categories which existed in significant numbers in the national economy. Accordingly, he held that plaintiff was not entitled to a period of disability under section 216(i) or to disability insurance benefits under section 223(a). The Appeals Council, upon request of plaintiff, reviewed the Examiner's decision and affirmed it.

Essentially, the motions present the question whether the final decision of the defendant is supported by substantial evidence in the light of the entire record in the case.

Chief Judge Sheridan of the Middle District of Pennsylvania, in Knelly v. Celebrezze, 249 F.Supp. 521 (M.D.Pa. 1966) has aptly summarized the basic governing principles:

"The burden is on the plaintiff to prove a disability as defined by the Act. 42 U.S.C.A. §§ 416(i) and 423(c). The Secretary's findings of fact and the reasonable inferences drawn therefrom are conclusive if they are supported by substantial evidence. Ferenz v. Folsom, 3 Cir. 1956, 237 F.2d 46; 42 U.S.C.A. § 405(g). Substantial evidence has been defined as that which is more than a mere scintilla. It is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Substantial evidence must be enough to justify, if the trial were to a jury, a refusal to direct a verdict, when the conclusion sought to be drawn from it is one of fact for the jury. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. Consolidated Edison Co. of New York v. National Labor Relations Board, 1938, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126; National Labor Relations Board v. Columbian Enameling & Stamping Co., 1939, 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660; Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 488, 71 S. Ct. 456, 95 L.Ed. 456. The determination of substantial evidence is to be made on a case-to-case basis. Celebrezze v. Wifstad, 8 Cir. 1963, 314 F. 2d 208.

A two-part test has been established to determine the existence of the required disability: (1) what is the extent, if any, of the claimant's physical

or mental impairment, and (2) does the impairment result in his inability to engage in any substantial gainful activity? Klimaszewski v. Flemming, E.D.Pa.1959, 176 F.Supp. 927." 249 F.Supp. at 522–523.

Plaintiff entered the Wilmington Medical Center (Delaware Division) on April 30, 1970, and remained there until May 30, 1970. His final diagnosis as shown by its report was:

"1. Rheumatic heart disease with presumptive SBE with infected tooth.

2. Possible chronic pyelonephritis."

Plaintiff filed an application for insurance benefits on June 1, 1970, claiming that he first became unable to work on April 15, 1970. The disability stated was "Heart murmur resulting from rheumatic fever. Had rheumatic fever in about 1947. T.B. current and kidney infection."

On September 11, 1970, plaintiff was seen by Dr. Katalan, who diagnosed plaintiff's difficulty as:

"1. Sub-acute bacterial endocarditis.

2. Rheumatic heart disease.

3. Chronic pyelonephritis."

On May 6, 1971, defendant requested Dr. Dreifus to give a medical opinion in connection with the disability claim, and as a basis for his opinion, submitted to him the data previously referred to. Dr. Dreifus stated that he found the diagnosis of rheumatic heart disease, pyelonephritis and sub-acute bacterial endocarditis, American Heart Association Class II B, to be "relatively"* substantiated by medically acceptable clinical and laboratory diagnostic techniques. When asked his opinion as to the level of the severity of the plaintiff's impairments he said on May 13, 1971, that at the time of the infection plaintiff was prob-

ably disabled, and that at "this time he is an American Heart Classification II." He stated that the pyelonephritis was "probably dorment [sic]", that "rheumatic carditis is dorment [sic]", and that the "degree of disability of any or one of these impairments is probably minimal at this time."

When Dr. Dreifus was asked what restrictions he would impose upon the plaintiff, he said:

"The patient should not be exposed to wet or damp climates. He should not be allowed to undergo any dental manipulations without antibiotic coverage. The patient can probably do work in keeping with his age and education, I do not think he should lift more then [sic] 50 pounds or push more than 50 pounds. He probably would be restricted in climbing elevations because of his blood pressure, hence, ladders, television towers, etc. would be inappropriate."

In response to the question whether plaintiff had the residual functional capacity to resume his prior employment as a truck driver, Dr. Dreifus said:

"The patient has been employed as a truck driver. I do [sic] no reason he could not drive a truck. I am some what concerned that he would be involved in lifting heavy loads and if this was required as part of his job as a truck driver, he probably would get into difficulty. Hence, I would eliminate that part of his job, lifting."

Finally, Dr. Dreifus was asked what residual physical functional capacity the plaintiff had and he replied:

"The patient can probably operate at ordinary physical activity. I think that anything more than ordinary will produce symptoms. I feel that he has no disabilities from the pyelonephri-

---

* This qualification was probably limited to the sub-acute bacterial endocarditis. Dr. Dreifus said:

"[T]here was no organism picked up in the blood for a diagnosis for sub-acute bacterial endocarditis. However, patient received a galaxy of antibiotic agents prior to blood study cultures and hence it may have been impossible to have picked up a contributing organism. I think that clinical decision to treat the patient for sub-acute bacterial endocarditis was a wise one."

tis, there is no recent issue of rheumatic fever and I doubt that sub-acute bacterial endocarditis has anything to do with his present physical capacity at this time."

On June 1, 1971, Dr. Hoch wrote a letter stating that the plaintiff:

"has been disabled due to a serious heart condition since April 1970.

He has been treated for acute bacterial endocarditis since that time.

Has not recovered full capabilities."

When Dr. Dreifus rendered his opinion on May 13, 1971, he had obviously not seen Dr. Hoch's letter. The opinions expressed by Dr. Dreifus, however, are not refuted or even weakened by Dr. Hoch. The fact that Dr. Hoch said that plaintiff "[h]as not recovered full capabilities" finds no support in specific and complete clinical findings and little weight should be given to it. See 20 C. F.R. § 404.1526. Furthermore, this is not inconsistent with Dr. Dreifus' conclusion as to the limited nature of the plaintiff's impairment. Even though Dr. Hoch's letter was not before Dr. Dreifus when he rendered his opinion, it was before the Hearing Examiner and was taken into consideration by him.

Plaintiff testified that only a short time after he got out of the hospital he attempted to drive an oil truck but had to give up the job because it caused him to get dizzy and sick and produced pressure pains in his chest. He further testified that after several weeks of rest he again attempted less strenuous jobs but had to abandon these efforts because pressure pains again returned to his chest, and that lately even relatively light work, such as cutting the grass, proved too difficult for him.

■ The physical impairment underlying the difficulties which plaintiff testified to cannot be held to be "medically acceptable" by "clinical and laboratory diagnostic techniques" in view of the opinions which Dr. Dreifus expressed.

This is the requirement of 42 U.S.C. § 423(d)(3).

Testifying on the basis of a hypothetical question which postulated a debility on the part of plaintiff amply supported by the record, Mr. Orr, a vocational expert, stated that a number of specific positions were available in the plaintiff's region and in several other regions of the country which plaintiff could perform on a sustained basis and in competition with others.

■ Plaintiff argues that Mr. Orr gave no evidence that potential employers would be willing to hire a person with the complaints which the plaintiff expressed. This is irrelevant, for under section 423(d) "substantial gainful work" may exist within the meaning of the Act regardless of "whether a specific job vacancy exists for [a claimant], or whether [a claimant] would be hired if he applied for work". "This is plain language and the legislative history of the amended definition of disability supports construction of the statute in accordance with its terms." Gentile v. Finch, 423 F.2d 244, 246 (3d Cir. 1970).

■ The jobs which Mr. Orr testified that a person with plaintiff's infirmities might fill were not too general in their description to be meaningless, as the plaintiff has argued.

■ Based upon a review of the entire record the Court holds that the findings of the defendant are amply supported by substantial evidence, and that plaintiff has failed to sustain the burden of proving that he is entitled to the disability benefits which he claims.

Since this suit was filed, plaintiff submitted a supplemental affidavit by Dr. Parvis Mostafavee verified October 5, 1972, stating that plaintiff "has, to my evaluation, severe hypertension, artereoschlerosis and cardiac failure" and that "I feel this patient has a permanent disability and has to have further and regular follow-up check ups with an in-

ternist". Despite the fact that the affidavit was not part of the record before the defendant and hence technically outside the purview of this Court's consideration, nevertheless it has not been ignored. It does not, however, alter the conclusion previously expressed, and for this reason the motion of the defendant to strike it will be denied.

The motion of the defendant for summary judgment will be granted and that of the plaintiff will be denied.