**Joseph G. PARRISH, Jr.**

v.

**Abraham A. RIBICOFF, Secretary of Health, Education and Welfare.**

Civ. A. No. 29313.

United States District Court
E. D. Pennsylvania.

July 21, 1961.

W. J. Krencewicz, Shenandoah, Pa., for plaintiff.

Walter E. Alessandroni, U. S. Atty., by Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

WOOD, District Judge.

This is an action under § 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare, denying plaintiff's claim for a period of disability and for monthly disability insurance benefits.

In support of his claim, the plaintiff testified before the Hearing Examiner that shortness of breath stopped him from working as a miner in January of 1955 (TR 58). Before that time, shortness of breath had slowed him down, and at the time of his testimony, plaintiff got winded over the least little thing (TR 59). The Hearing Examiner asked plaintiff if he felt he couldn't do light work, and the answer was that he felt he could not work because he didn't have the wind, didn't feel good, and felt sick in the chest (TR 62, 63). Prior to this hearing, plaintiff had been examined by two physicians who submitted written reports. These were received in evidence and appear at pages 122, 139, and 144 of the record. In addition, the opinion of a third physician appears at page 131. Doctor Ne Vertts found the plaintiff "totally disabled for any type of work." (TR 123); and "totally disabled for do-

ing any type of work including light work of any nature." (TR 140). Doctor Ne Vertts was the plaintiff's physician and had been treating him for a chest condition for a number of years. Doctor Stanulonis examined plaintiff on behalf of the government and he concluded: "I do not feel that he can be gainfully employed." (TR 144). At the time of the plaintiff's testimony before the Hearing Examiner there was no medical evidence to controvert the opinions recited above. There was a record of Pulmonary Function Determinations containing the following diagnostic conclusion:

"In spite of relatively good ventilation studies, this man has all clinical signs and symptoms of advanced anthracosilicosis with superimposed emphysema which is totally disabling." (TR 131).

Although all X-ray studies showed late second stage or third stage anthracosilicosis, and although all examining physicians thought the plaintiff was so short-winded as to be unable to do any type of work, the Hearing Examiner was apparently impressed with the relatively good ventilation studies, so that at the conclusion of the plaintiff's testimony, the Examiner adjourned the hearing for further medical studies (TR 64).

The plaintiff was then examined by Doctor Wolffe who submitted a report appearing at page 153 of the record. At the conclusion of his report, Doctor Wolffe stated: "The patient should benefit by vocational rehabilitation." (TR 155). The hearing was resumed so that plaintiff's attorney could cross-examine Doctor Wolffe. From this examination it appeared that Doctor Wolffe concurred in the diagnosis that plaintiff had anthracosilicosis; however, Doctor Wolffe's blood tests showed that the oxygen content of plaintiff's arterial blood and the carbon dioxide content of his venous blood were within normal limits, although quite low-normal. Apparently, these findings caused Doctor Wolffe to suspect plaintiff's veracity, or at least his accuracy, in describing his symptoms of chest pains and severe shortness of breath. Indeed, Doctor Wolffe stated: "I would say I remember him as one of the most uncooperative patients I have ever come across. He just, with the exceptions of the examinations that has nothing to do with his cooperation, the other parts, he just laid down on the job." (TR 82). And again, "Let's say that, giving him the benefit of the doubt, he was very nervous. But nevertheless, as far as we were concerned, we considered him not a cooperative patient. Not because he didn't want to cooperate, but maybe because he was nervous and didn't feel that he should cooperate." (TR 85, 86). Doctor Wolffe concluded that the plaintiff could do "lots of work." (TR 98).

■ Although the Hearing Examiner stated at the hearing that he was not particularly interested in Doctor Wolffe's conclusion as to whether the plaintiff was disabled, it is clear from the Examiner's written decision that he relied completely on Dr. Wolffe's estimate of the plaintiff's capabilities for work. That decision reads in part: "The opinion of the last medical examiner herein is that the claimant is not disabled and should benefit by vocational rehabilitation. After weighing all of the evidence, the medical findings, and the opinions of the physicians, *the Hearing Examiner has determined to give the greatest weight to the latest findings and opinion of the medical specialist.*" (TR 10). (Emphasis supplied.) The opinions of the other three physicians, contradictory to the opinion of Dr. Wolffe, were rejected by the Hearing Examiner with only one sentence of explanation: "It is true that there are medical opinions in the case that this claimant is disabled, *but these opinions are admittedly at variance with the medical findings.*" (TR 10). (Emphasis supplied.) We find no basis whatsoever in the record to support the statement that the opinions of the physicians who found the plaintiff totally disabled were "admittedly at variance with the medical findings." This is important, because we think the plaintiff was entitled to a finding by the Hearing Examiner showing

the reason for rejecting the opinion of three physicians and adopting the opinion of another, particularly when the diagnosis of *all* physicians was anthracosilicosis in an advanced stage.

█ The scope of our review of the Secretary's findings of fact is governed by the following statutory provision:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C.A. § 405, 1960 Supp.

Our judicial duty has been further defined by the Court of Appeals for the Third Circuit in the recent case of Braun v. Ribicoff, 292 F.2d 354, as follows:

"In Boyd v. Folsom, 1958, 257 F.2d 778, we defined the scope of the review to be applied to the Secretary's decisions by United States district courts. We said, id. at page 781, that ultimate facts must be reached by a process of legal reasoning based on the legal significance to be afforded primary evidentiary facts and that therefore ultimate findings of fact by the Secretary were reviewable, citing Goldman v. Folsom, 3 Cir., 1957, 246 F.2d 776, 779. We also stated that, 'Our judicial duty * * * is to satisfy ourselves that the agency determination has warrant in the record, viewing that record as a whole, and a reasonable basis in law. Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456.'"

In the case at bar, the Hearing Examiner based his denial of benefits to the plaintiff upon the finding that the plaintiff had failed to prove that he was unable to engage in any substantial gainful activity. We think that this was an "ultimate fact" as that term is used in the Braun case, supra, and that consequently we have a duty to extend our review of that finding beyond the mere inquiry as to whether it is supported by substantial evidence, albeit not to substitute our own conclusion for that of the Hearing Examiner.[1] Guided by these standards of review, we think that the agency determination in this case did not have warrant in the record as a whole; at least absent a finding by the Hearing Examiner on the relative qualifications or credibility of the physicians which led him to reject the conclusions of three and adopt the conclusion of one.

Furthermore, we think that the conclusion that the plaintiff failed to prove his inability to engage in any substantial gainful activity had no reasonable basis in law.

In the case of Klimaszewski v. Flemming, D.C.E.D.Pa.1959, 176 F.Supp. 927, at page 932, Chief Judge Biggs (sitting by assignment) stated:

"The word 'any' (meaning any substantial gainful activity) must be read in the light of what is reasonably possible, not of what is conceivable. The statute must be given a reasonable interpretation. It is a remedial statute and must be construed liberally. It was not the intention of Congress to impose a test so severe as that required by the Secretary and to exact as a condition precedent to the maintenance of a claim the elimination of every possibility of gainful employment."

1. Judge Kalodner in his concurring opinion in Boyd v. Folsom, supra, stated:
"It is true with respect to such an inference, that if it is supported by substantial evidence, it could not be rejected by the District Court. It is equally true that ' * * * courts must now assume more responsibility for the reasonableness and fairness' of decisions of federal agencies 'than some courts have shown in the past' and 'Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function.'" 257 F.2d at page 782.

In the case at bar, the claimant has completed only a seventh grade education, and has worked as a miner ever since he first began working. The opinion of Dr. Wolffe that claimant would be a good "maintenance man" is not substantial evidence in support of the Hearing Examiner's conclusion that plaintiff failed to prove his inability to work when viewed in light of the whole record, applying the legal standard of the Klimaszewski case.

For the foregoing reasons, we enter the following Order:

### Order

And now, to wit, this 21st day of July, 1961, it is ordered that the decision of the Secretary is reversed.