Anthony YECKABOFSKY, Plaintiff,
v.
Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, United States of America, Defendant.
Civ. A. No. 28177.

United States District Court
E. D. Pennsylvania.
July 17, 1962.

W. J. Krencewicz, Shenandoah, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., for defendant.

GANEY, Circuit Judge.*

This action was commenced under § 205(g), as amended, of the Social Security Act, 42 U.S.C.A. § 405(g) to review a decision of the Secretary of Health, Education and Welfare denying plaintiff's claim for disability benefits.

Alleging that he had been unable to work since March of 1949, because he was suffering from anthracosilicosis, plaintiff filed an application with the Social Security Administration pursuant to § 223 of the Act, 42 U.S.C.A. § 423, for monthly disability insurance benefits.[1] The Secretary determined that plaintiff's impairments were not of such severity as to continuously preclude him from engaging in any substantial gainful activity at or prior to December 30, 1959, when he last met the earning requirements of the Act, and denied his claim on January 26, 1960, and his request for review on May 24, 1960.

We think the claim should be sent back to the Secretary for further action. For a proper understanding of our reasons for thinking so, a rather detailed statement of the history of the case should be set forth.

A partial résumé of the testimony and medical reports upon which the hearing examiner based his decision is as follows: "Claimant gave his date of birth as February 9, 1898 * * *. He attended elementary school up to the 4th grade and began working in the coal breakers sometime in 1912. He served in World War I from 1917 to 1919. After his discharge he began working as a laborer in the coal mines and was employed [as a coal miner] until October, 1945, when he was compelled to terminate his work because of shortness of breath. Claimant stated that he first began to notice shortness of breath in 1944. He was out of work then for about three months * * *. He returned to work in February, 1945, but in October found that he could no longer continue because of his difficulty in breathing. Claimant testified that he had received no medical treatment for his shortness of breath until he began receiving treatment at the State Clinic in Shenandoah (Pennsylvania) on March 9, 1949, when x-rays of his chest were taken. He has been attending the clinic regularly since that time * * *. He was hospitalized at the Veterans Administration Hospital, Batavia, New York, from April through August, 1955, because of his lung condition * * *. He has great difficulty in getting about because of his shortness of breath. He finds that it is difficult to lift anything and complained of a dizzy sensation when bending * * *. He does very little about the house. His wife takes care of the cleaning and other household duties * * *.

"A medical statement by a physician associated with the United Mine Workers Anthracite Health and Welfare Fund, dated September 9, 1948, states that the claimant has shortness of breath, cough, weakness and a probable secondary infection. That he is suffering from anthracosilicosis and is permanently disabled.

\* \* \* \* \* \*

"An x-ray of the claimant's chest was taken by the Department of Welfare on March 9, 1949. * * * The impression was that the claimant had entered the early phase of an advanced or third stage anthracosilicosis with some emphysema.

\* \* \* \* \* \*

" * * * He was again examined on December 18, 1951, [by the Veterans Administration] in connection with his application for a nonservice connection disability pension * * * The diagnosis was as follows: (1) Anthracosilicosis, 3rd stage; (2) External hemorrhoids; (3) Sub-deltoid bursitis left, from records, with history of chronic dislocation (of) left shoulder.

---

* Specially designated to sit in the District Court.

1. The application for benefits included a claim to establish a period of disability under § 216(i) of the Act.

"According to reports from the Veterans Administration Hospital, Batavia, New York, claimant was hospitalized from April 14 through August 15, 1955. During hospitalization tomograms revealed productive infiltrations in the right lower lung field * * * At the time of the discharge the following diagnoses were furnished: (1) Silicosis; (2) Pneumonia, interstitial, chronic with pulmonary fibrosis; (3) Hypertensive cardiovascular disease; (4) Perforation of right tympanic membrane.

* * * * * *

"A medical report * * * from the State Clinic, Shenandoah, Pennsylvania, dated April 14, 1959, states * * * that he is totally disabled as a result of anthracosilicosis. An x-ray from the clinic on January 25, 1956, indicated that the degree and extent of the chronic fibrosis was about the same when compared with the previous x-ray of January 4, 1955. The suggestion of cavitation in the middle third of the right lung was still present. Subsequent x-ray of January 7, 1959, showed an advanced or third stage anthracosilicosis with areas of coalescing density present in the middle and lower third of the right lung and in the lower third of the left * * *.

"Pulmonary function studies performed May 5, 1959,[2] showed that claimant had a predicted vital capacity of 4014 c.c. Vital capacity was 2705 c.c. The 3 second vital capacity test was indicated as 2447 c.c. or 67% of his predicted vital capacity * * * [and] as 88% of vital capacity. The predicted maximum breathing capacity was shown as 105 liters per minute. Maximum breathing capacity was 90 liters per minute or 85% of the predicted maximum breathing capacity. The physician furnished an impression that the claimant had restrictive ventilatory insufficiency with some obstructive ventilatory insufficiency."

At the request of the Social Security Agency, Dr. David S. Marshall, II, who examined the plaintiff in July of 1959, reported that although the claimant did not appear to be acutely or chronically ill, that his heart and blood pressure were normal, that he was mentally alert and that there was no gross evidence of pulmonary emphysema in the structure of the thoracic cage, he was suffering from anthracosilicosis, had very poor vision and wears glasses all the time, had a punctured right eardrum and that his hearing was fair. He advised that no treatment was indicated at that time and concluded that the plaintiff was "unable to do anything but sedentary activities."

A determination by the Pennsylvania State Board of Vocational Education concluded: "We feel on the basis of the evidence presented that W/E is not disabled. His dyspnea is not too limiting. No evidence of pulmonary insufficiency on physical exam. We feel he is not disabled because of the ventilation studies indicating very slight ventilatory insufficiency. We feel W/E may be able to engage in SGA [3] in field in which he may have competence."

The hearing examiner then went on to find and conclude: "The substantial medical evidence does not show that claimant suffers from a severe pulmonary insufficiency or that emphysema exists to a degree that prevents him from engaging in all types of substantial gainful activity. While it is recognized that the claimant cannot engage in strenuous or other arduous activities and that his partial disabilities undoubtedly handicap him in obtaining suitable gainful employment, the conditions described indicate that he is not prevented from engaging in light types of work commensurate with his age, training, past background and experience. Accordingly, he did not meet the test of the Act or the requirements under existing regulations."

---

**2.** Performed by Dr. Stanley Stanulonis at the request of the Social Security Administration.

**3.** These letters apparently stand for substantial gainful activity.

It seems clear to us that the factor which the hearing examiner relied upon the most in reaching his decision was the estimated degree of emphysema suffered by plaintiff as indicated by the pulmonary functions studies report submitted by Dr. Stanulonis on May 11, 1959. For on page 6 of his report the hearing examiner states: "The ventilation studies performed by a specialist in May, 1959, to determine his present residual pulmonary capacity show only a mild to moderate ventilatory and obstructive insufficiency. In view of the clinical findings contained in the recent examinations indicating only a moderate pulmonary insufficiency; it cannot be held that this condition was more severe at or before December 31, 1950, when his insurance was last in force."

[1, 2] We think the ventilation tests are too inconclusive to base a finding of nondisability. By means of artificial respiration a dead man could be made to show good pulmonary ventilatory capacity. As we understand it, the disease of anthracosilicosis causes emphysema which in turn brings about a shortness of breath. The abnormality results from the partial loss of the ability of the lungs to aid in absorption of oxygen and to get rid of carbon dioxide.[4] Thus it would seem to us that a test which would indicate the efficiency of the body for absorbing oxygen from the air in the lungs would be a better yardstick for determining the degree of plaintiff's incapacity resulting from his emphysema. In the case of Parrish v. Ribicoff, 195 F.Supp. 930 (E.D.Pa., 1961), tests for ascertaining the oxygen content of a claimant's arterial blood and the carbon dioxide content of his venous blood were at least made. As far as the record in the case before us shows, no such tests were performed upon the plaintiff. Consequently, it appears to us that these tests should be performed upon the plaintiff, and the Social Security Administration should have the benefit of the results of these tests before the Secretary makes a final determination as to the severity of plaintiff's disability. In addition, we think the hearing examiner should take into consideration plaintiff's other physical defects such as his poor eyesight and hearing impairment along with his difficulty in breathing, and to re-evaluate his claim for disability benefits in the light of the opinions in Braun v. Ribicoff, 292 F.2d 354 (C.A.3, 1961); Parrish v. Ribicoff, supra.

Accordingly, pursuant to § 205(g) of the Act, this case will be remanded to the Social Security Administration for further action consistent with the discussion in the foregoing opinion.

---

4. See "Emphysema—Our Most Neglected Disease?" Reader's Digest, September, 1961.