Sheaffer *v.* Penn Dairies, Inc., et al., Appellants.

Argued October 7, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

584

*Frank R. Ambler,* with him *Paul A. Mueller,* for appellants.

*B. M. Zimmerman,* for appellee.

OPINION BY RENO, J., January 8, 1948:

The referee refused compensation to the claimant upon the ground that her husband had died of natural causes and not from an accidental injury. The board found that his death resulted from an accidental fall, but refused compensation because claimant was not "living with" the deceased at the time of his death. The court below reversed the board, awarded compensation, and from its judgment the employer and its insurance carrier appealed.

The case turns upon the meaning of §307, 77 PS §562, of the Workmen's Compensation Act: "No compensation shall be payable under this section to a widow, unless she was living with her deceased husband at the time of his death, or was then actually dependent upon him and receiving from him a substantial portion of her support."

The board found: "10. Decedent left to survive him a widow, Lillian M. Sheaffer, claimant herein, who was not living with him nor dependent upon him and receiving from him a substantial portion of her support." A conclusion of law, similarly phrased, was the basis for its refusal of an award.

The evidence was that claimant and her husband were married on November 15, 1941, and returned on the same day to their respective homes in Mount Joy. He died on January 12, 1942. They had never set up a home of their own, or lived in a room or rooms under the same roof. Each continued to live in separate rooms in the houses in which they had dwelt before the marriage. In a narrow and severely literal sense of the

phrase, claimant was not "living with" the deceased at the time of his death.

The evidence was and, depending upon its appraisal of claimant's credibility, the board could have found that claimant's parents were invalids, she was their sole support, and to avoid administering a shock to them she and her husband determined to keep their sudden marriage a secret until by their constant association together at her home her parents became reconciled to the idea of her marriage. They saw each other daily, either at her home or his boarding house and, as soon as her parents could be safely advised of her marital status, they planned to have him move into her home, when she would discontinue work and give her eyes needed rest and treatment. Although she continued to work and support her parents, he contributed to her maintenance, purchasing some of her clothing, paying several dollars weekly for groceries, and supplying fuel oil for the heating of her house.

There was no evidence of a repudiation of marital obligations, no break in the connubial relations, no legal separation, no release of matrimonial duties, no estrangement, and if proof of intercourse is lacking it may be inferred or supplied. If the nature and the character of their married life and their intention respecting it are examined it is apparent that while they were not living in the same place and under the same roof they were in substance and in spirit "living with" each other.

"Living with" does not always import physically dwelling together in the same house. *Icenhour v. Freedom Oil Works Co.*, 136 Pa. Superior Ct. 318, 7 A. 2d 152; 145 Pa. Superior Ct. 168, 20 A. 2d 817; *Dietrich et al. v. Hudson Coal Co.*, 117 Pa. Superior Ct. 193, 177 A. 606. Whether parties are "living with" each other is a question of fact, but it is to be determined, not by consulting only one facet of the relationship, but by inspecting the whole picture. And where it is found that for the convenience of the parties, or for some other moving

and reasonable motive they dwell in separate homes without estrangement or repudiation or release of their legal obligations, and with constant recognition of the marital tie, it is no strain upon logic or credulity to find that they were "living with" each other. Cf. *Creasy v. Phoenix Utilities Co.*, 276 Pa. 583, 120 A. 659. For in this class of cases, we look beyond the form to the substance, from outward appearances to the realities behind them.

The board, as its finding indicates, construed the phrase too narrowly, and having discovered the one fact that the parties did not occupy the same living quarters, rested its finding that they were not living together solely upon that circumstance. If the board had found the facts indicated by the evidence which we have recited, assuming that claimant's testimony was credible, we believe it might have inferred the ultimate fact that claimant lived with the deceased. Its error consisted in concentrating its attention upon one item of the proof, ignoring the rest of the testimony, and without finding the specific facts, reached a conclusion which upon its face indicates failure to consider all the evidence.

The court below properly construed the meaning of the phrase, "living with," but unfortunately and, as we think, inadvertently stepped beyond the bounds of its authority. It found as facts the circumstances to which we have adverted, and upon the basis of its factual finding entered an award and judgment. The board is the exclusive fact-finding tribunal even when, as here, the testimony is free from conflict, and the case should have been and must be remanded to it for the purpose of finding all the facts, as well as the ultimate fact, in the light of the legal meaning of "living with" as herein construed.

Both sides relied upon the *Icenhour* case, supra. The case was here twice, and in its several aspects it supports both parties, and reinforces this opinion. In the first opinion Judge, now President Judge, RHODES said (p. 322) : ". . . and if the living apart is merely for

the mutual convenience or for the joint advantage of the parties, and the obligation of the husband to support her is recognized, the right of compensation exists as if they were living together." The second appeal was unavailing because the board had found against the widow upon the facts. In both cases there was recognition of the fact-finding function of the board, and of the power of a reviewing court to remand a claim for more specific and sufficient findings of fact. Our disposition will enable the board to reconsider the case, to take further testimony if deemed necessary, and to find the facts with greater specificity. What its findings shall be, and what inferences it shall draw from the testimony are within its exclusive control.

The judgment is vacated and the record is remitted to the court below with directions to remand it to the board for further consideration and proceedings not inconsistent with this opinion.