**Ann M. BOYD**

v.

**Marion B. FOLSOM, Secretary of Health, Education and Welfare of the United States of America, Appellant.**

**No. 12339.**

United States Court of Appeals
Third Circuit.

Argued Jan. 24, 1958.

Decided June 27, 1958.

Caleb M. Wright, District Judge, dissented.

Hershel Shanks, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., D. Malcolm Anderson, U. S. Atty., Pittsburgh, Pa., Paul A. Sweeney, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Roger W. Hager, Johnstown, Pa., for appellee.

Before BIGGS, Chief Judge, KALODNER, Circuit Judge, and WRIGHT, District Judge.

BIGGS, Chief Judge.

This is an appeal by the Secretary of Health, Education and Welfare [1] from a judgment of the District Court for the Western District of Pennsylvania reversing its disallowance of claims of Ann M. Boyd, the widow of Charles W. Boyd under the provisions of Title II (Federal Old Age and Survivors Insurance Benefits) of the Social Security Act as amended.

Specifically, Mrs. Boyd seeks: (1) Mother's Insurance Benefits [2]; Step-

1. All functions of the Federal Security Administrator were transferred to the Secretary of Health, Education and Welfare by Section 5 of the 1953 Reorganization Plan No. 1, effective April 11, 1953. 18 Fed.Reg. 2053, 67 Stat. 631, 5 U.S.C.A. following section 133z–15.

2. Section 202(g) of the Social Security Act provides, that a widow of an individual who died fully insured shall be entitled to mother's insurance benefits if, among other conditions, at the time of filing application she has in her care a child of the insured individual entitled to a child's insurance benefit and if the widow was living with the insuree at the time of his death. 42 U.S.C.A. § 402 (g).

Section 216(h) (2) of the Act in part states that a widow shall be deemed to have been living with her husband at the time of his death if,

(1) they are both members of the same household on the date of his death, or

(2) she was receiving regular contributions from him toward her support on such date, or

child's Insurance Benefits [3]; and (3) Lump-Sum Death Payments.[4]

The widow's claims were denied initially by the Bureau of Old Age and Survivors Insurance of the Social Security Administration. A hearing was then held before an agency referee who sustained the Bureau's original determination disallowing Mrs. Boyd's claims. Review of the Referee's findings was denied by the Appeals Council of the Department of Health, Education and Welfare. The case at bar was then instituted in the court below pursuant to Section 205(g) of the Act. 42 U.S.C.A. § 405(g), and on a motion for summary judgment the court entered judgment and an appropriate order in favor of Mrs. Boyd. 149 F.Supp. 925. The appeal followed.

The Act authorizes recovery by a widow if she was "living with" the wage earner at the time of his death. The statute further provides that a widow shall be deemed to have been "living with" her husband at the time of death if they "were both members of the same household on the date of his death or [if] she was receiving regular contributions from him toward her support on such date." Section 216(h) (2), 42 U.S.C.A. § 416(h) (2). The validity of Mrs. Boyd's claim on behalf of her children turns on whether the children were "living with" the wage earner or were receiving one-half of their support from the wage earner at the time of his death.

Section 202(d) (4), 42 U.S.C.A. § 402 (d) (4).

The record reflects the following undisputed facts which may be summarized as follows. Mr. and Mrs. Boyd were married on April 5, 1952 when he was 59 and she was 35 years old. Mr. Boyd had had nine children by a prior marriage and the claimant two. In August 1952, Mrs. Boyd left her marital residence at 4 Brixner Alley, Johnstown, Pennsylvania, and moved into her own quarters at Lee Place, a short distance away from Charles Boyd's home. Her moving was in no way to be considered a repudiation of her connubial relations, but was motivated by friction which developed between Mrs. Boyd and her children on one side and Charles Boyd's children on the other.

Although it is apparent from the record that the wage earner and the claimant were not at all times living physically in the same abode, the record shows that Mr. Boyd would see his wife practically every day, and would spend a considerable number of nights at his wife's home. During this period Mrs. Boyd gave birth to twins, and at the time of Mr. Boyd's death she was again pregnant. Any further evidence of their engaging in sexual intercourse after Mrs. Boyd moved into her own residence is obviated by the fact that death struck the wage earner when he and the claimant were consummating the sexual act at her home. In the light of the views

---

(3) he had been ordered by any court to contribute to her support. 42 U.S. C.A. § 416(h) (2).

3. Section 202(d) of the Act in pertinent part provides for the payment of benefits to the child (under 18 years of age) of a fully insured individual provided such child was dependent upon such individual at the time of such individual's death. 42 U.S.C.A. § 402(d).

Section 216(e) of the Act defines "child" to include the stepchild of a deceased individual who has been such stepchild for not less than one year immediately preceding the day on which such individual died. 42 U.S.C.A. § 416(e).

Section 202(d) (4) provides that a child who has not attained the age of 18 shall be deemed dependent upon his stepfather at the time of the stepfather's death if at such time the child was (1) living with, or (2) receiving at least one-half of his support from such stepfather. 42 U.S.C.A. § 402(d) (4).

4. Section 202(i) of the Act provides, in relevant part, that upon the death of an individual who died a fully or currently insured individual, an amount equal to three times such individual's primary insurance amount shall be paid in lump-sum to the person determined to be the widow of the deceased and to have been living with the deceased at the time of death.

expressed immediately hereinafter it is not necessary to determine whether these facts alone would be sufficient to support a finding that Mr. and Mrs. Boyd were "both members of the same household on the date of his death" as provided by Section 216(h) (2).

In addition to these facts, Mr. Boyd continued to contribute to his wife's support. When his heart condition allowed him to earn money he would give Mrs. Boyd $60 per month. In July of 1953, Charles Boyd was hospitalized because of his heart condition, his earning power was entirely cut off, his expenses increased, and his only source of income was a pension which afforded him $126.-00 a month. Out of this meager sum of money, Mr. Boyd was required to maintain his home, provide for himself, and his children. During this period Mrs. Boyd was receiving $146.73 a month from the Pennsylvania Department of Public Assistance.

Despite his financial condition, Mr. Boyd continued to perform his duties as best he could for his new family by contributing $5 to $10 twice a month to the claimant up until a few months before his death. From September 1954 to December 1954, he gave Mrs. Boyd six dollars in cash. He also provided Mrs. Boyd with some furniture to be used at her new address, and paid about $8 a month for the Blue Cross and Blue Shield Insurance for Mrs. Boyd and her children.

On the basis of these facts the Referee found that Mrs. Boyd was not "living with" Mr. Boyd at the time of his death. This decision was founded upon the Referee's finding that Mr. and Mrs. Boyd were not "members of the same household" at the time of death and that Mrs. Boyd "was not receiving regular contributions from him toward her support". The Referee also found that since Mrs. Boyd's children were living with her, and since their claim required them to be living with the wage earner since he was not contributing one-half of their support that they could not recover. The District Court ruled that the Referee's

findings were not supported by the evidence and reversed the agency determination.

Initially, it should be pointed out that the provision dealing with the rights of stepchildren, note 3 supra, and which allows recovery if the child is "living with" the wage earner, does not attempt to define the phrase. Therefore, we feel that if the claimant, Ann M. Boyd, was living with her husband, Charles W. Boyd, that her two children by a prior marriage, who were living with her were also living with their stepfather. Accordingly, the entire case is bottomed on whether or not Mrs. Boyd was living with Mr. Boyd at the time of his death.

We conclude that the Referee's finding that Mrs. Boyd was not receiving regular contributions for her support from Mr. Boyd cannot be upheld upon a review of the whole record.

It must immediately be noted that this finding by the Referee was in the nature of an ultimate finding of fact, and is nothing more than a legal inference from other facts. In re Pioch, 3 Cir., 1956, 235 F.2d 903. While it is true, as the Secretary argues, that the reviewing authority of the District Court is limited in that it may not substitute its own factual findings for those of the Referee, Section 205(g), Social Security Act; Ferenz v. Folsom, 3 Cir., 1956, 237 F.2d 46, since ultimate facts must be reached by a process of legal reasoning based upon the legal significance to be afforded primary evidentiary facts this aspect of administrative fact finding has its law-making aspect, and is therefore reviewable. Goldman v. Folsom, 3 Cir., 1957, 246 F.2d 776, 779; Baumgartner v. United States, 1953, 322 U.S. 665, 671, 64 S.Ct. 1240, 88 L.Ed. 1525; Lehmann v. Acheson, 3 Cir., 1954, 206 F.2d 592, 594; Galena Oaks Corp. v. Scofield, 5 Cir., 1954, 218 F.2d 217. Our judicial duty therefore is to satisfy ourselves that the agency determination has warrant in the record, viewing that record as a whole, and a reasonable basis in law. Universal Camera Corp. v. National Labor Relations Board, 1951, 340

U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456; Jaffe, Judicial Review: Questions of Law, 69 Harv.L.Rev. 239 (1956).

Section 404:1111(b) of Title 20 C.F.R. sets up a flexible standard against which the sufficiency of the wage earner's contributions must be assessed. It requires the agency in the determination of the sufficiency of contributions to take into account "the surrounding circumstances with respect to both the time when the contributions were received by the applicant for his or her support and the amount thereof."

■ The record adequately shows that when Mr. Boyd was capable of gainful employment he made substantial contributions to his wife. After he was hospitalized, his earning power was cut off and his expenses increased; however, he continued to contribute to his wife's support as best he could. Taking into account the surrounding circumstances at the time of these contributions, as we must, it is clear that the conclusion of the Referee that Mrs. Boyd was not receiving regular contributions from Mr. Boyd toward her support was either induced by an erroneous view as to the legal standard to be applied to such contributions or if the correct standard were applied is not supportable by the record. In either case, the order of the District Court must be affirmed. It will be so ordered.

KALODNER, Circuit Judge (concurring).

A man isn't "living with" his wife "at the time of his death" even though he dies while engaged in sexual intercourse with her.

That was the startling result reached in the instant case by the Secretary of Health, Education and Welfare in giving sanction to the Referee's decision to that effect.

The District Court thought otherwise. I agree with the District Court.

Chief Judge Biggs has confined his consideration to the single issue as to whether Mrs. Boyd "was receiving regular contributions" from her deceased husband at the time of his death [1] and on that score has determined that the District Court correctly held that the Referee erred in finding that she was not. I am in complete accord with that determination.

I am, however, apprehensive that the failure of this Court to specifically rule upon the issue presented by the Referee's finding that Mrs. Boyd was not "living with her husband at the time of his death" because they "were not members of the same household at the time of his death" [2] might be construed as acquiescence with that finding, despite the undisputed fact that Mr. Boyd's death occurred while he was performing the marital act.

The Referee's finding that the deceased wage earner was not "living with" Mrs. Boyd is, of course, an ultimate finding of fact, referred to in this type of case as "an inference drawn from the facts."

It is true with respect to such an inference, that if it is supported by substantial evidence, it could not be rejected by the District Court.[3]

It is equally true that " * * * courts must now assume more responsibility for the reasonableness and fairness" of decisions of federal agencies "than some courts have shown in the past" and "Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function." [4]

1. Sec. 216(h) (2) of the Act.

2. Ibid.

3. "The reviewing authority of the District Court is not unlimited, for it may not substitute its inferences for those of the referee which are supported by substantial evidence." Ferenz v. Folsom, 3 Cir., 1956, 237 F.2d 46, 49, certiorari denied 1957, 352 U.S. 1006, 77 S.Ct. 569, 1 L. Ed.2d 551.

4. Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456; Goldman v. Folsom, 3 Cir., 1957, 246 F. 2d 776, 778.

As earlier stated, the Referee's decision that Mrs. Boyd was not "living with" Mr. Boyd at the time of his death was based in part on his finding that they were not then "members of the same household."

Putting it mildly, the Referee's decision is something less than a model. For example, he never even mentioned the undisputed circumstance that Mr. Boyd's death occurred while he was engaged in the act of sexual intercourse with Mrs. Boyd.

As to Mr. Boyd's death all that the Referee said was "He died on the evening of December 10, 1954, while visiting the claimant."

Here is what the record disclosed:

"Q. Had you and your husband had sexual intercourse on this evening? A. Yes, that's how he died. Mrs. Bloom next door, her and I helped to put his underwear on half ways, we could just put it on half ways, and covered him up with the blanket. She asked me to get the alcohol and she rubbed his forehead and lips and he opened his eyes and mouth twice."

In corroboration, Mrs. Bloom, in a statement which is part of the record, said:

"Then on the evening of death Mrs. Ann Boyd pounded on the wall for me to hurry and come over. Then I came over to Mr. Boyd and put cold water on his head and called his name he opened his eyes and mouth twice. Then I called the police ambulance at once they all out on call he was dead about an hour * * * I helped Mrs. Boyd put on Mr. Boyds underware one piece which we could only get on over hips." *

The District Court was, of course, fully justified in taking into consideration the Referee's failure to give weight to circumstances which prevailed at the very moment of Mr. Boyd's death in assessing whether the Referee's finding that the "living with" requirement had not been met was based on substantial evidence.

The Referee's decision reveals that he construed the term "same household" as used in Section 216(h) (2) of the Social Security Act, to mean under a "single roof".

In my opinion he erred in that respect.

As the District Court so well stated:

"The involvements and complexities which underly the marriage relationship do not lend themselves to rigid and dogmatic interpretation. To limit the evaluation of whether husband and wife were living together in one household to sole consideration of living under one roof is, in my judgment, unduly restricting and giving shallow effect to the meaning and significance of the sanctity of the marriage vows. The realities and pressures which are an inevitable consequence of children brought into the household born of previous marriages gives rise to subtle human conflicts and personality clashes which require the best and most able resources and ingenuity of the spouses to compromise and sublimate. I can recognize the circumstances of the claimant and decedent's dual loyalties to their children and marriage, and of their zealous efforts to reconcile and preserve them both." 149 F.Supp. at page 927.

The undisputed evidence discloses that Mrs. Boyd moved into her own quarters in August, 1952, because of friction, which took on the aspects of violence, between her and her adult stepsons. Shortly before her moving she caused one of them to be arrested on the charge that he had threatened to kill her. He was fined by the local alderman and released. During the hearing before the Referee this stepson, Charles W. Boyd,

* The spelling, and punctuation, or lack of it, are Mrs. Bloom's.

Jr., testified "I cannot remember" when asked as to whether he had threatened to kill Mrs. Boyd.

Between the time of her moving in August, 1952, until Mr. Boyd's death in December, 1954, they lived together as man and wife. The birth of their twin children on April 22, 1954, and the posthumous child on May 30, 1955, is eloquent testimony that the Boyds were not separated, although they maintained separate quarters, and that they continued unbroken the chain of marital relationship.

Mrs. Boyd testified, and her testimony was not refuted, with respect to her relationship between August, 1952, and the date of Mr. Boyd's death, as follows:

"Q. Now he visited you, I understand, often after you left in August, 1952? A. We were seeing each other every day. He was either at our house or I was down at his house, and I'd go Friday after school and stay over the weekend, and if I didn't want to go down he'd come to our place.

"Q. Did you go to Brixner Alley and stay overnight? A. Yes, and sometimes in the middle of the week.

*    *    *    *    *    *

"Q. Well, you and your husband didn't live together in the same house on a permanent basis, is that correct? A. He went to work from our place, and he went back and forth until I had the babies and I couldn't go back and forth.

"Q. I didn't understand that. A. He was either at our house or we were down at his house every day.

"Q. Where were his clothes? A. Both places. He used to bring his pajamas at our house and his clothes back and forth. He'd go to work from our place.

"Q. Why didn't you move into Brixner Alley? A. He said the boys didn't want me.

"Q. Why didn't you ask him to come and live with you where you were living? A. He said he couldn't work any more and he was sick half the time. He said what could he do, there wasn't much he could do.

*    *    *    *    *    *

"Q. What did he say? A. He said he couldn't leave his family, that's how he put it. He married me but he had a family and wouldn't leave."

It is pertinent to note that in the state where the Boyds resided, Pennsylvania, the courts have construed the term "living with", as used in the Pennsylvania Workmen's Compensation Act,[5] as not requiring living under the same roof.

Thus in Sheaffer v. Penn Dairies, Inc., 1948, 161 Pa.Super. 583, at page 585, 56 A.2d 368, 369, it was held:

" 'Living with' does not always import physically dwelling together in the same house *   *   * Whether parties are 'living with' each other is a question of fact, but it is to be determined, not by consulting only one facet of the relationship, but by inspecting the whole picture. And where it is found that for the convenience of the parties, or for some other moving and reasonable motive they dwell in separate homes without estrangement or repudiation or release of their legal obligations, and with constant recognition of the marital tie, it is no strain upon logic or credulity to find that they were 'living with' each other *   *   * For in this class of cases, we look beyond the form to the substance, from outward appearances to the realities behind them."

5. Section 307 of the Pennsylvania Workmen's Compensation Act, 77 P.S. § 562, provides as follows:
"No compensation shall be payable under this section to a widow, unless she was living with her deceased husband at the time of his death, or was then actually dependent upon him and receiving from him a substantial portion of her support."

In Healey v. Folsom, D.C.S.D.N.Y. 1955, 139 F.Supp. 285, which the Referee cited as "analogous" to the instant case, the claimant and wage earner were married in 1941 but separated in 1947 because he was an alcoholic. Between the time of separation and the wage earner's death in 1951, he made sporadic visits to the claimant's home and had marital relations with her and would then disappear. Three children were born during the period of separation. The Referee based his finding that claimant was not "living with" the wage earner at the time of his death on these undisputed facts: in her application for her own benefits she stated that she was not living with her husband when he died; in her application for "child's insurance benefits" she also stated "* * * my husband did not contribute regularly and substantially to my support. We were separated at the time of his death"; and finally, her own attorney had stated in a letter to the Social Security Administration that the claimant and her husband "were not living together at the time of Mr. Healey's demise, due to unhappy differences which had arisen between the parties."

What has been said disposes of the Referee's ultimate finding of fact that Mrs. Boyd was not "living with" Boyd "at the time of his death." It need only be said with respect to that finding that not only was it unsupported by substantial evidence but it was also in patent disregard of the "facts of life".

With respect to the Referee's finding that Mrs. Boyd "at the time the wage earner died * * * was not receiving regular contributions from him toward her support" this might well be added to what was said by Chief Judge Biggs:

It is true that from the time Mr. Boyd was compelled to stop working because of ill health (September, 1953) until his death (December 10, 1954), he contributed only small sums to Mrs. Boyd's support—$8.00 monthly for hospitalization and medical insurance and $5.00 to $10.00 at various times. But these contributions must be assessed against the circumstance that here was a sick man receiving pension payments of $126.00 a month out of which he had to maintain a home for himself and his children and Mrs. Boyd was at the time receiving $146.73 monthly from the Pennsylvania Department of Public Assistance. She was eligible for such assistance payments; he was not eligible because of his pension payments. The "facts of life" of this day and age are that this type of family situation is far from uncommon—that public assistance is granted where because of illness the head of a household cannot "support" those who are dependent upon him.

The Referee made much of the public assistance extended to Mrs. Boyd, stating " * * * it is apparent that he [Mr. Boyd] was quite willing to have public assistance furnish the complete support for the claimant and the children. His attitude along these lines is indicated from what took place on April 16, 1952, eleven days after he married the claimant. At this time his wages were averaging some $240.00 a month and he applied for public assistance for his wife, her children and his daughter, Nancy."

It must be said that the citation of the April 16, 1952 public assistance application is totally unjustified and evidences quite clearly an inexplicable attitude of antagonism which should have no place in the performance of an administrative function.

The plain fact of the matter which the Referee failed to mention in his Decision is, that on April 16, 1952, as the record discloses, there was a strike at Mr. Boyd's place of employment and the assistance application was designed to, and did, cover only the strike period. Only a "one-time" grant of assistance was made at the time.

Of the same piece is the Referee's finding that Mr. Boyd only made eleven payments of $30.00 each to Mrs. Boyd from November 30, 1952, through July, 1953—a total of $330.00 over a seven-month period. What the Referee did not mention, let alone find as a fact, was

that during this period Mr. Boyd was unable to work because of illness for almost three months. The record shows that when working, during this period, he paid Mrs. Boyd $30.00 twice a month; a substantial proportion of his wages.

The Referee was certainly on notice of the frequent interruptions in Mr. Boyd's employment, as the following excerpt from the testimony of Frank Boyd, a son of the deceased, establishes (p. 81 N.T.): [6]

> "Referee: Well, his wage record shows—I don't have the breakdown of the wage reportings by quarters —but it shows he earned $3600 in 1951 [the Boyds were married in April, 1952] that was the maximum creditable under social security. In 1952, $2900. So he must have been out of work for some time in '52.
>
> "Mr. Frank Boyd: Most of the time in '52 and '53 he didn't work very good. It must have been '53 when he retired."

This only remains to be said. Contribution to support is a flexible element and must be evaluated in the light of the contributor's "ability to pay". The record reveals that Mr. Boyd supported Mrs. Boyd although circumstances beyond his control diminished the quantum of the support but not its existence.

CALEB M. WRIGHT, District Judge (dissenting).

The precise question presented on this appeal is whether the Referee's findings were supported by substantial evidence.

Section 205(g) of the Act provides:

> "Any individual, after any final decision of the Secretary made after a hearing to which he was a party, * * * may obtain a review of such decision by a civil action * * *.

Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides * * *. As part of its answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. *The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *.*" (Emphasis supplied.) 42 U.S.C.A. § 405(g).

The Referee's determination which was affirmed by the Agency held that the claimant was not entitled to mother's insurance benefits nor lump-sum payments because the "living with" requirement of the Act was not met.[1] "Living with" as enunciated in the statute pertinent to these specific claims has a peculiar meaning spelled out in the applicable statutory sections. It is only complied with if,

(1) claimant and decedent were both members of the same household on the date of death, or

(2) she was receiving regular contributions from him toward her support on such date, or

(3) he had been ordered by any court to contribute to her support.[2]

The Referee found that the claimant and the wage earner were not members of the same household on the date of death. This finding was based upon the evidence which demonstrated:

The wage earner resided at 4 Brixner Alley; whereas claimant at the time of

---

6. Frank Boyd was called as a witness by the Referee. He could scarcely be called a "friendly witness" as far as Mrs. Boyd was concerned.

1. This action does not involve claims for the wage earner's natural children pursuant to 42 U.S.C.A. § 402(d) since the Secretary readily concedes the three children born of this marriage are entitled to Child's insurance benefits. Thus, at the present time claimant receives monthly benefits in the sum of $162 applicable to Charleton, Carleton and Betsy Boyd.

2. 42 U.S.C.A. § 416(h) (2).

wage earner's death resided at 327 Lee Place. At all times wage earner's clothes and personal belongings were at the Brixner Alley residence. The wage earner's intentions at date of death were that these arrangements would be permanent and there was no intention on his part that he and the claimant would become members of the same household.[3]

Secondly, the Referee held that at the time of death the claimant was not receiving regular contributions from decedent toward her support. On this point the Referee concluded that the eleven payments of $30 each, ceasing over one year prior to death could in no way be considered substantial, notwithstanding wage earner during this period was not gainfully employed because of his severe cardiac condition. Receipt by the wage earner of pensions totaling $126 per month was sufficient evidence to the Examiner to indicate that he was in a position to make some type of regular contribution.

Finally, the Referee held that wage earner had not been compelled by court order to provide support for claimant. The record is uncontradicted that this was the case.

Against this background, I feel that the Referee's findings were supported by substantial evidence,[4] and therefore the District Court on review erred in substituting its determination and inferences for those of the Referee.[5] Thus evaluated, I concur with this Circuit's recent pronouncement in Forenz v. Folsum,[6] wherein the permissive bounds of review were clearly enunciated, and in Judge Hastie's dissent in Goldman v. Folsom, particularly with respect to the concluding observation set forth below:[7]

"I am not concerned that the estate of Mrs. Goldman will get a modest sum in a doubtful case. I am concerned, however, that with so many controversies like this continually requiring administrative decision, this court embarks upon a course of substituting judicial for administrative judgment in doubtful situations."

Accordingly I dissent.

---

3. "I don't believe we ever would have made a full-time home together. He liked to have a good time too well to settle down. He divided his time between 4 Brixner Alley, Johnstown, Pa. and 327 Lee Place, Johnstown, Pa. a distance of about 7 blocks. I was willing to make a full-time home with him if he had wanted to. I did his laundry (except shirts which he always sent to a commercial laundry) and cooked his meals when he was with me."

(Statement of claimant, Ann M. Boyd, Jan. 5, 1955).

4. 42 U.S.C.A. § 405(g).

5. Forenz v. Folsom, 3 Cir., 1956, 237 F.2d 46, certiorari denied 1957, 352 U.S. 1006, 77 S.Ct. 569, 1 L.Ed.2d 551.

6. Note 5, supra.

7. 3 Cir., 1957, 246 F.2d 776, 781.