Mrs. Bessie M. **WOODLIEF**

v.

Robert H. **FINCH**, Secretary of Health, Education and Welfare.

Civ. No. 2228.

United States District Court
E. D. North Carolina,
Raleigh Division.

Dec. 22, 1969.

Clyde A. Douglass, and Clyde A. Douglass, II, Raleigh, N. C., for plaintiff.

Robert H. Cowen, U. S. Atty., Raleigh, N. C., for defendant.

## OPINION

WIDENER, District Judge (By Assignment):

This is an action by the plaintiff, Mrs. Bessie M. Woodlief, to review a final decision of the Secretary of Health, Education and Welfare, the defendant, denying the plaintiff's application for a period of disability and disability benefits, as authorized by the Social Security Act, as amended, 42 U.S.C. Section 416(i) and Section 423.

The plaintiff filed an application with the Bureau of Old Age and Survivor's Insurance of the Social Security Administration on the 25th day of April, 1967, to establish a period of disability, alleging that she became disabled within the meaning of the Social Security Act on February 11, 1953. On June 18, 1968, the Hearing Examiner issued a decision finding that the claimant was not entitled to the establishment of a period of disability under the provisions of Section 216(i) of the Social Security Act. On August 21, 1968, the Appeals Council affirmed the Hearing Examiner's decision.

On October 17, 1968, the plaintiff filed her Complaint asking that the decision of the Secretary of Health, Education and Welfare be reversed and that the plaintiff's claim be allowed for total and permanent disability. On January 30, 1969, the defendant filed an Answer denying the pertinent allegations of the plaintiff's Complaint with respect to the request for a finding of disability. On April 17, 1969, the defendant filed a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure, and also filed a Memorandum of Law in support thereof. Thereafter, the plaintiff filed her Cross-Motion for Summary Judgment and also filed a Memorandum of Law in support thereof.

The record discloses that the plaintiff was born on March 16, 1916, and received only an eighth grade education. She is married and has several grown children and one minor son. Mrs. Woodlief was continously employed from 1946 until her illness on February 11, 1953 as a cloth grader with Burlington Mills, Franklinton, North Carolina. She suffers primarily from rheumatic heart disease with auricular fibrillation. This heart disease has existed since February 11, 1953 and she has been under the constant care of physicians since that date. On the advice of her physicians, the plaintiff has not worked or been gainfully employed due to her physical condition since the beginning of her illness.

Two physicians, Dr. A. P. Newcomb (now deceased) of Henderson, North Carolina, and Dr. G. R. Tucker, Jr., of Henderson, North Carolina, have regularly attended the plaintiff since the date of her illness. On July 28, 1967, the plaintiff underwent open heart surgery (open mitral valvulotomy) by Dr. Cox at Duke University Medical Center, Durham, North Carolina. It is the opinion of Dr. G. R. Tucker, Jr. that the plaintiff has been totally disabled by rheumatic heart disease since her last pregnancy and delivery of 1952–53.

Dr. A. P. Newcomb admitted the plaintiff to Maria Parham Hospital, Henderson, North Carolina, on the 20th day of October, 1957 for an acute case of influenza. Dr. Newcomb recorded in the hospital record the past history, physical examination, and X-ray report of the plaintiff's condition at the time of said admission. The report appears on Page 126 of the Record, and reads as follows:

"PAST HISTORY: Measles, mumps, whooping cough, chickenpox in childhood. No severe injuries or operations. About 5½ years ago while pregnant, patient was discovered to have a systolic heart murmur associated with arrhythmia and some myocardial weakness. Diphtheria 6 years of age.

PHYSICAL EXAMINATION: Well nourished and developed white female 41 years of age. Head-negative, Neck-negative, Chest-few coarse rales heard over both lungs. Heart apparently moderately enlarged. Rhythm irregular which may be related to extra systolic, or a slow fibrillation. Systolic murmur heard over pericardium. Abdomen-liver is palpable and seems slightly enlarged. Genitalia-negative except for slight erosion of cervix. Rectal-negative, Extremities-negative.

X-RAY REPORT: 10/25/57; Chest-The heart is somewhat above normal limits in size, appearing rather generally full. The great vessels are not remarkable. There appears to be a little pulmonary congestion in the upper lobes."

Dr. A. P. Newcomb was the plaintiff's attending physician during her last pregnancy and delivery in 1952–53, and it was during this pregnancy that Dr. Newcomb discovered the plaintiff to have rheumatic heart disease.

On October 24, 1964, Dr. Newcomb admitted the plaintiff to Maria Parham Hospital because of her heart trouble, and in his admission record he recorded the following:

"HISTORY: Swelling of legs, especially right below knees. Nervous and shortness of breath on slight exertion and weakness for several days before admission. History of heart disease for about 12 years.

PHYSICAL EXAMINATION: Well nourished white female 48 years of age. Headglasses for reading. Several teeth decayed. Neck-Negative. Chest-Heart markedly enlarged. Heart rate 33 per minute. Rhythm slightly irregular, loud systolic murmur. * * *

X-RAYS: 10–27–64– GI Series: Marked cardiac enlargement present and there was severe pressure on the esophagus by apparently the left auricle. * * *"

Dr. David A. Oursler, Medical Consultant to the Bureau of Disability Insurance, reviewed the record of the plaintiff on November 21, 1967 and he admitted that the plaintiff's claim of disability would appear to be substantiated if there were objective clinical findings of cardiac enlargement with a loud murmur present in 1957 . Dr. Oursler noted that the plaintiff's record did not contain the Maria Parham Hospital admission record of 1957 and recommended that this record be obtained. Dr. Oursler's review reads as follows:

"A review of the records, however, reveals that in addition to the physician's note concerning the presence of heart disease since 1957, and the Duke University note, stating significant onset in approximately 1962, there is also a notation in the Parham Hospital discharge summary of 11–9–64, which would suggest that heart disease has been present for 12 years prior to that note. At the time of discharge on 11–9–64, the heart was markedly enlarged, with a loud systolic murmur. Unfortunately, the Parham Hospital did not include the discharge summaries of the 2 earlier admissions, that of 10–20–57 and 2–11–53. It is hoped that the hospital can be recontacted concerning the physical findings during those admissions. If marked cardiac enlargement, with a loud murmur, were present in 1957, at the time the WE was hospitalized for 'influenza,' then the allegation of disability would appear to be substantiated. If these findings were not present on the admission in 1957 or the earlier admission, then the SA's position would be rational. It is, therefore, suggested that the hospital be recontacted and that the situation be explained to them so that the old records may be obtained."

Upon the death of Dr. A. P. Newcomb in November, 1967, the plaintiff came under the care of Drs. G. R. Tucker and Millard W. Wester, Henderson, North Carolina. Dr. Tucker stated that the plaintiff has been disabled since her last

pregnancy and delivery of 1952–53. This statement appears on Page 127 of the Record, and reads as follows:

"The above named 51 year old white, married female has come under our care since the death of Dr. A. P. Newcomb who has followed her since 1952. Her history reveals that during her last pregnancy in 1952–53 she was discovered to have heart murmurs suggestive of rheumatic heart disease in spite of absence history of rheumatic fever. She apparently exhibited some signs and symptoms of congestive heart failure during this pregnancy and was under close care by Dr. Newcomb who reported her problem to her and since that time her activity has been limited by her disease. She subsequently developed auricular fibrillation and was digitalized. As is classical in these problems, she subsequently developed more insufficiency and in July of 1967 underwent open heart surgery for partial correction of the problem with fair results.

The patient is still incapacitated and takes prophylactic Penicillin and Digoxin daily.

From the records I received from Dr. Newcomb's office and the history and findings in this case, I feel it is fair to say that this patient has been essentially disabled by rheumatic heart disease since the pregnancy and delivery of 1952–53.

It is interesting to note also that a brother under my care had rheumatic heart disease with no history for rheumatic fever in the past."

There is other important evidence in the Record before this Court, but it is substantially the same as that discussed above and little could be gained by reviewing it. Suffice it to say that the uncontradicted evidence in the Record does not substantiate the findings and conclusions of the Hearing Examiner and Appeals Council.

All of the physicians that have examined the plaintiff state that she is suffering from a rheumatic heart disease which was first discovered in 1952–53. Her personal physician, Dr. G. R. Tucker, Jr., under whose care the plaintiff came following the death of her attending physician, Dr. A. P. Newcomb, is of the opinion that she has been disabled since her last pregnancy of 1952–53. While it is true that the plaintiff carries the burden of proof in this case, the Secretary has not refuted the strong evidence of disability. It is interesting to note that not a single one of the specialists referred to by the Government examined the plaintiff. While this Court does not ignore the opinion of noted specialists in the field of heart study, it cannot accept their views in preference to those expressed by physicians who have personally examined the plaintiff on numerous occasions.

A recent case decided by the Court of Appeals for the Fourth Circuit, Underwood v. Ribicoff, 298 F.2d 850 (4th Cir., 1962), is very similar to the one before this Court. In that case, the claimant suffered from a heart disease. The Appeals Council affirmed the Hearing Examiner's denial of disability benefits. At page 853, the Court, speaking through J. Spencer Bell, Circuit Judge, had the following to say:

"That part of the record examined so far does not give appreciable support to a finding that Claimant was able to engage in a substantial gainful activity. Quite the contrary, it gives overwhelming support to a finding that Claimant could not do hard or moderate manual labor, and, indeed, that he could not maintain even slight exertion for any appreciable length of time."

The Court concluded its opinion in the case by saying the following:

"We think that it is possible to make a finding of nondisability on the basis of this record only if one adopts a highly technical and literal interpretation of the Act. We believe that on the entire record, on the basis of the objective medical evidence, and of the substantial body of subjective evi-

dence of incapacity, which is largely uncontradicted, and of the evidence of Claimant's work history, educational background, and age, the District Court was not in error in finding that this Claimant was precluded by reason of his physical condition from holding any substantial, gainful employment."

Title 42 U.S.C. Section 416(i) (1) (A) expressly states that disability must occur "* * * by reason of any medically determinable physical or mental impairment which can be expected to result in death or [to be of long-continued and indefinite duration] * * *." There is no evidence in the record to show that plaintiff suffers from a remedial illness. On the contrary, members of the plaintiff's family, friends, and neighbors corroborated the fact that the plaintiff had been totally disabled since 1953 and all the evidence in the Record clearly establishes that the plaintiff suffered from an illness described in Section 416 of the Act and has been totally incapacitated since February, 1953.

The Court has considered the standard for judicial review set out in Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir., 1964), and has considered the test set out in Underwood v. Ribicoff, supra, and is of the opinion that the evidence in this Record does not substantiate the conclusions of the Appeals Council in disallowing the plaintiff's claim. In Thomas v. Celebrezze, supra, Judge Sobeloff, in setting out the prescribed standard of judicial review by the Court, said:

" * * * In short, the courts are not to try the case de novo. At the same time, they must not abdicate their traditional functions; they cannot escape their duty to scrutinize 'the record as a whole' to determine whether the conclusions reached are rational. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Boyd v. Folsom, 257 F.2d 778 (3rd Cir., 1958); * * * if

* * * reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the courts are * * * bound to decide against the Secretary. * * * In such a circumstance the courts are empowered either to modify or reverse the Secretary's decision 'with or without remanding the cause for rehearing.' 42 U.S.C.A. Sec. 405(g)."

Since Dr. Newcomb, the physician making the above quoted hospital record of 1957, is dead, no possible purpose could be served by taking more evidence.

An order is this day entered allowing plaintiff's Motion for Summary Judgment, and denying defendant's Motion for Summary Judgment.