Andrew J. **KOSNOSKY**, Plaintiff,

v.

Elliott L. **RICHARDSON**, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 66–288.

United States District Court, W. D. Pennsylvania.

July 16, 1971.

James B. Yelovich, Somerset, Pa., for plaintiff.

Richard L. Thornburgh, U. S. Atty., by Douglas D. McBroom, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, Chief Judge.

On September 18, 1964, plaintiff, Andrew J. Kosnosky, filed with the Social Security Administration, Bureau of Old-Age and Survivors Insurance, an "Application for Insurance Benefits for Child of Living Wage Earner * * *" (Tr., pp. 74–77) under § 202(d) of the Social Security Act, as amended, 42 U.S.C.A. § 402(d), alleging that he was under a disability, as defined in § 223(c) of the Act, as amended, 42 U.S.C.A. § 423(c), which began before he attained the age of eighteen. Plaintiff qualified under § 202(d) as a child dependent on his father, Steve Kvanosky, a wage earner entitled to disability insurance benefits under the Act.[1] Plaintiff's claim was denied by the Bureau, and at plaintiff's request a hearing was had before a hearing examiner of the Social Security Administration who also denied plaintiff's claim. On January 6, 1966, the Appeals Council of the Social Security Administration advised plaintiff that his request for review by it of the hearing examiner's decision was denied and that the hearing examiner's decision stood as the final decision of the Secretary of Health, Education and Welfare. Pursuant to § 205(g) of the Act, 42 U.S.C.A. § 405(g), plaintiff then commenced this action, *pro se*, to obtain a judicial review of the decision of the Secretary, proceeding in forma pauperis by leave of the court. The defendant filed a certified copy of the transcript of the record of the proceedings before the Social Security authorities in compliance with § 205(g) of the Act, *supra*, and subsequently moved for summary judgment. At oral argument, the plaintiff and his father appeared without counsel.

After argument and upon due consideration of the record submitted, this court concluded that the Secretary's final decision denying plaintiff benefits was not supported by substantial evidence and that plaintiff had met his burden of proving that he was disabled before he attained the age of 18. Accordingly, on February 28, 1967, it was ordered that the decision of the Secretary be reversed and the cause remanded with directions to grant plaintiff disability benefits in accordance with his application of September 18, 1964.

On April 28, 1967, the Secretary filed a notice of appeal from the judgment of this court. After the docketing of his appeal the Secretary moved to vacate the judgment of the District Court and to order the case remanded to him for further consideration. On June 5, 1969, the Court of Appeals granted the Secretary's motion.[2]

On November 19, 1969, a supplemental hearing was held before a hearing examiner of the Social Security Administration. Plaintiff and his father, unrepresented by counsel, appeared at this hearing and testified. Dr. Owen D. Benton, a psychiatrist, and Dr. George Stouffer, a vocational expert, testified as impartial expert witnesses at the request of the hearing examiner, and supplemental exhibits were received into evidence at the hearing.[3] After considering the additional evidence presented the hearing ex-

1. A prior claim for child insurance benefits filed October 7, 1963 by the father, Steve Kvanosky, had been denied because the father was not then himself entitled to disability insurance benefits. The father subsequently (August 27, 1964) obtained certification of entitlement to benefits as of September, 1963. From the transcript of the entire record, it is clear that the Secretary does not contest

that Steve Kvanosky, so spelled, is the father of Andrew J. Kosnosky, so spelled.

2. See: Kosnosky v. Finch, 410 F.2d 762 (3d Cir. 1969).

3. These exhibits consist of: Exhibit 29, Birth Registration; Exhibit 30, Case Development Sheet; Exhibit 31, Medical Records of Somerset State Psychiatric Hospital; Exhibit 32, Report of Contact;

aminer filed a recommended decision holding that plaintiff was entitled to child's insurance benefits.

The case then came before the Appeals Council for final administrative decision. The Council did not receive additional evidence, but reviewed the paper record "De Novo" and filed a written decision which concluded that plaintiff was not entitled to benefits. Accordingly, the final decision of the Secretary holds that plaintiff is not entitled to child's insurance benefits.

Plaintiff has again commenced an action, *pro se*, to obtain a judicial review of the Secretary's final decision. The Secretary has moved that summary judgment be entered against the plaintiff because his final decision is supported by substantial evidence. On December 24, 1970, James B. Yelovich, Esquire, entered his appearance for the plaintiff, and on April 19, 1971, the case was submitted to this court on briefs without oral argument.

■ Our jurisdiction and the scope of our review of administrative findings such as were made in this case are clear. Section 205(g) of the Act, *supra*, provides in pertinent part that:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

Under § 205(g) and under the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., we are limited to "ascertaining whether on the record as a whole there is substantial evidence to support the Secretary's findings of fact." Goldman v. Folsom, 246 F.2d 776, 778 (3d Cir. 1957). But where, as in our present case, the hearing examiner and the Appeals Council disagree, the Supreme Court has instructed in Universal Camera Corp. v. National Labor Relations Bd., 340 U.S. 474, 496, 71 S.Ct. 456, 469, 95 L.Ed. 456 (1951) that:

"* * * [E]vidence supporting a conclusion may be *less* substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. *The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case.*" (Emphasis supplied.)

We must not abdicate our required function to scrutinize the record as a whole to determine if the Appeals Council's conclusions have a reasonable basis in law and that proper legal significance has been afforded to the primary evidentiary facts. Boyd v. Folsom, 257 F.2d 778 (3d Cir. 1958).

Plaintiff was born on October 20, 1939 and claims to be the disabled child of Steve Kvanosky an individual entitled to disability insurance benefits. As such, under § 202(d) of the Act, *supra*, plaintiff is entitled to child's insurance benefits if he was under a disability which began before he attained the age of 18.[4] Section 223(d) of the Act, *supra*, provides:

"(1) The term 'disability' means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

---

Exhibit 33, Professional Qualifications of Dr. Owen D. Benton; Exhibit 34, Letter to Dr. Stouffer; Exhibit 35, Letter to Dr. Owen D. Benton.

4. An individual is deemed to have attained a given age on the first moment of the

day preceding the aniversary of his birth corresponding to such age. 20 CFR 404.2(c) (4). In this case plaintiff was born on October 20, 1939 and must establish he was under a disability on or before October 18, 1957.

The impairments which plaintiff claims disabled him prior to his attaining age 18 are psoriasis and psychiatric disorders, the pertinent findings of the Appeals Council regarding these impairments show (Tr., p. 131):

"7. The claimant's psoriasis was not sufficiently grave to result in an inability to engage in any substantial gainful activity on or before October 18, 1957.

"8. After his attainment of age 18, the evidence shows that the claimant developed significant psychological and psychiatric problems but there is no persuasive evidence that these disorders existed to any significant degree prior to age 18."

■ We have carefully reviewed the record upon which the Appeals Council based its decision and have concluded that on the record as a whole, the Appeals Council's decision to the effect that plaintiff was not disabled by his psychiatric problems prior to his attainment of age 18 is *not* supported by substantial evidence as that term is defined by the Supreme Court of the United States in the case of National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939):

"Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' * * *."

■ There are four elements of proof to be considered in determining whether a claimant is disabled within the meaning of the Social Security Act: (1) the objective medical facts, and clinical findings; (2) the subjective evidence of disability testified to by the claimant and others in a position to observe him; (3) the claimant's age, background and work history; and (4) the expert medical opinions on subsidiary issues of fact, such as the effect of clinically determinable impairments upon an individual. Mode v. Celebrezze, 359 F.2d 135, 136 (4th Cir. 1966), citing Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). The record reveals the following respecting these elements.

The objective medical evidence on plaintiff's psychiatric impairment is adequately summarized by the Appeals Council in their written decision (Tr., p. 128):

"In the psychiatric area a variety of diagnoses have been set forth but no diagnoses of a psychotic or psychoneurotic classification were offered at any time prior to age 18. At age 21, the claimant was examined by Dr. Rosenbaum and no psychiatric, emotional or personality abnormalities were recorded. A few months later he was seen by Dr. Musser who recommended a psychiatric consultation for the claimant because of what he considered his 'rather bizarre personality.' He was of the opinion that he did have a personality disorder and that he was 'unambitious and disinterested in everything including his own personal appearance.' It, thus, appears that the earliest medical opinion that the claimant may have had any impairment in the psychiatric area was not recorded until January 1961 when he was 21 years old. It does not appear that the suggested psychiatric consultation was obtained at that time. When admitted to the Bureau of Vocational Rehabilitation Center at Johnstown two years later he arrived with an admitting diagnosis of personality disorder apparently based on Dr. Musser's 1961 examination. On admission he submitted to a general physical examination by a Dr. Klemans, who questioned whether there was truly any personality problem. He described the claimant as 'a dissident, 23-year old white male in no acute distress.' He was apparently seen by a psychiatrist on March 18, 1963 when he was examined by Dr. Chianese who regarded the claimant as most properly carrying a diagnosis of schizophrenic reaction,

simple type. Several weeks later he underwent a psychological evaluation including Rorschach testing. The examiner, Dr. Gaberman, found the claimant exhibited some evidence of anxiety and some difficulty in organizing reality. He summarized his findings by saying the claimant had a 'fairly severe personality disorder.' Further medical evidence directly bearing on his mental status was not obtained until his admission to Somerset State Hospital at age 27. At that time he was examined by Dr. Arthur E. Orlidge and diagnosed as exhibiting a 'Psychoneurotic Disorder, Anxiety Reaction.' This diagnosis was retained until discharge."

Between the ages of 14 and 21 plaintiff does not appear to have been examined by a doctor and no medical evidence exists for this period. But a report on plaintiff's psoriatic condition, which has afflicted plaintiff at least since he was 14, shows that the importance of this condition is the affect it has on plaintiff's personality.[5]

The objective medical evidence is at least consistent with a finding that plaintiff's psychiatric problems existed prior to his attaining age 18, and it does not contain substantial evidence to support the Secretary's contrary finding. In such circumstances it is proper to look to the other elements probative of disability to see if they show whether the objective medical evidence may, or may not, reasonably be related back to the critical period.

The subjective evidence of plaintiff's disability, as testified to by the plaintiff and his father, and his background and work record, likewise are consistent only with a finding that plaintiff's psychiatric problems existed prior to attaining age 18.

Plaintiff's work record since high school consists of one day of washing dishes (June, 1959) and two weeks of dumping apples (September or October, 1959).

He was twice subject to rehabilitation efforts, neither of which resulted in job placement.[6] From March 11, 1963 to April 13, 1964 he attended Pennsylvania Vocational Rehabilitation Center in Johnstown where he received therapy and courses in custodial work, gardening and landscaping. A vocational report prepared at the center states that plaintiff is limited to manual labor or repetitive activity involving a maximum of supervision and a minimum of judgment and that plaintiff's potential may not be realized because of his personality problems.[7] From July 11, 1967 to September 13, 1967, he attended Somerset State Psychiatric Hospital where he was to be studied and placed in a hospital job setting to establish a regular work pattern.[8] The only record of gainful work performed at the hospital is a memo that plaintiff "is proud of the fact that he is cleaning up the bathrooms here." [9]

Plaintiff testified that his daily activities consist of walking the floor, drinking coffee, looking at pictures and occasionally helping with daily household chores. These activities seem to have consumed the majority of his time for the 12 years he has been on the labor market.

The Appeals Council ignored this subjective evidence of disability [10] even

---

5. Exhibit 22, Tr., p. 105.

6. The vocational expert testified the geographic area where plaintiff lives is the home of one of the world's largest rehabilitation centers, and employers in this area are disposed to hiring handicapped people. (Tr., pp. 191–192.) In this setting it is significant that plaintiff has undergone rehabilitation in two different centers and still not been placed in employment.

7. Exhibit 31, Tr., pp. 224–226.

8. Exhibit 31, Tr., p. 208.

9. Exhibit 31, Tr., p. 211.

10. The Appeals Council found that plaintiff's work efforts were neither indicative of ability or inability to engage in substantial gainful activity. (Tr., p. 129.)

though the hearing examiner, who observed plaintiff testify, found that plaintiff appears to have made sincere efforts to learn how to perform jobs possibly suited to his condition.[11] Because the determination of disability is a subjective determination [12] and because the

Secretary's own regulations require such evidence to be considered,[13] we feel that on the present record, absent a finding of malingering, this evidence should have been considered as indicative of the severity and duration of plaintiff's disability.

Of the four elements to be considered in making a determination of disability, three of them—medical facts, subjective evidence, and plaintiff's work record—are consistent only with a finding that plaintiff has met his burden of proving that he was disabled prior to attaining age 18 and do not contain substantial evidence to support the Secretary's finding to the contrary.

The remaining element probative of disability, expert medical opinion, is the only basis for the Secretary's finding that plaintiff's psychiatric problems did not exist prior to his attaining age 18. At the supplemental hearing Dr. Benton, a psychiatrist, testified at the request of the hearing examiner as an impartial medical advisor. Dr. Benton never examined the plaintiff, and his only connection with this case was in reading the "medical" exhibits [14] and in observing

the plaintiff during the course of the hearing. The Appeals Council's written opinion adopts, *in toto*, the following colloquy between the hearing examiner and Dr. Benton (Tr., p. 11):

"Q. Now you say it [plaintiff's psychiatric condition] was not as bad as it is today going back ten years ago. How bad was it before he reached 18? It's very crucial to this case.

"A. Before he reached age 18 there's nothing in the record that would be indicative or significant of psychiatric disorder. He was able to function in school and get decent grades not anywhere near what his capabilities are. Have friends, do things, even make an attempt to function at that time to try to get into the service. I gather from the testimony that the reason they did not take him was because partly because of his medical. They will reject people with certain skin blemishes. This primarily has been anything but functioning. So it would mean that ten years ago, 12 years ago he might not have been really different from his peers although the widening of the gulf between himself and his peers has been noticeably over the past ten years, as Mr. Kosnosky has essentially done nothing when his peers have

---

11. Tr., p. 140.

12. Bittel v. Richardson, 441 F.2d 1193 (3d Cir. 1971); Cf. Branham v. Gardner, 383 F.2d 614 (6th Cir. 1967).

13. 20 CFR 404.1532(d) provides:
"The adequacy of an individual's performance of assigned work is also evidence as to whether or not he has ability to engage in substantial gainful activity. The satisfactory performance of assignments may demonstrate ability to engage in substantial gainful activity, while an individual's failure, because of his impairment, to perform ordinary or simple tasks satisfactorily without supervision or assistance beyond that usually given other individuals performing similar work, may constitute evidence of an

inability to engage in substantial gainful activity."

14. A letter from the hearing examiner to Dr. Benton (Exhibit 35, Tr., p. 243) and testimony at the hearing (Tr., p. 166) show that only the "medical" exhibits were sent to Dr. Benton. The record does not reveal which exhibits were classified as "medical" and which were classified "non-medical"; therefore, we have no way of knowing the exhibits Dr. Benton considered in forming his opinion. See: Pulaski v. Finch, 415 F.2d 613, 619, n. 11 (3d Cir. 1969). The only exhibit which shows plaintiff's behavior prior to attaining age 18 is a report submitted by the supervising principal of his high school (Exhibit 16, Tr., p. 97); this exhibit could be classified as "non-medical".

been making their way with marriage and other things that people normally do."

The test to be applied in evaluating the expert testimony of a physician is set out in the Code of Federal Regulations, 20, CFR 404.1526 as follows:

"A statement by a physician that an individual is, or is not, 'disabled,' * * * 'unable to work,' or a statement of similar import, being a conclusion upon the ultimate issue to be decided by the Secretary, shall not be determinative of the question of whether or not an individual is under a disability. *The weight to be given such physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments.*" (Emphasis supplied.)

The hearing examiner, who heard the witnesses, did not adopt Dr. Benton's opinion. In light of the quoted regulation and the evidence in this case, we believe that the hearing examiner properly evaluated Dr. Benton's testimony, and the colloquy cited by the Appeals Council cannot be considered as substantial evidence supporting its decision.

The bases for Dr. Benton's opinion appear to be that plaintiff was able to function in high school [15] but not up to his capacity and that plaintiff had friends and was not different from his peers in high school. Because the Appeals Council adopted Dr. Benton's opinion, *in toto*, the quoted bases for his opinion must be supported by substantial evidence if the doctor's opinion and the Appeals Council's decision based upon it are to be given legal significance.

Since we are dealing with a psychiatric problem, plaintiff's performance in high school is more indicative of the long standing existence of his psychiatric problem than otherwise.[16] When plaintiff was at the Johnstown rehabilitation center he underwent individual psychological evaluation because he had scored poorly on group tests administered at the center. The results of this testing revealed that plaintiff had above average intellectual potential, *but that his severe personality disorder was influencing his intellectual efficiency.*[17] This interference with plaintiff's intellectual functioning appears in the record as early as 1951 and 1953 when plaintiff was approximately age 12 and 14 and scored 85 and 87, respectively, on group I.Q. tests. It is further evidenced by the report of the supervising principal of plaintiff's high school that plaintiff has little ability but "works to the hilt" with what he has.[18] Plaintiff's performance in high school cannot be substantial evidence supporting the Appeals Council's decision when plaintiff did not function up to his true intellectual capacity and the uncontradicted report from the Johnstown rehabilitation center shows that the reason for plaintiff's low functioning level was his psychiatric problem.

Dr. Benton also based his opinion on the assumption that plaintiff had friends and was not different from his peer group while in high school. His later testimony shows that this was the major factor he considered in forming his opinion (Tr., pp. 177–178):

"Q. Can you give us an opinion as to whether this [psychiatric] condition existed prior to reaching age 18 even though it may not have been diagnosed?

"A. I would say he had an emotional disorder at age 18 but I don't think at that time I would have labeled it something as severe as schizoid personality. At that time I might have been inclined to passive-dependent per-

---

15. The doctor's opinion also appears to be based upon plaintiff getting decent grades in high school, but nothing in this record shows what plaintiff's high school grades were.

16. Cf. Branham v. Gardner, 383 F.2d 614, 633 (6th Cir. 1967).

17. Exhibit 31, Tr., pp. 229–231.

18. Exhibit 16, Tr., p. 97.

sonality rather than schizoid because I don't think from the record at any rate that he was quite withdrawn as he has become."

While plaintiff did casually remark at the hearing that he had friends in high school,[19] this testimony was never enlarged upon or explained, and the record as a whole does not support a finding that plaintiff had friends while in high school. A report on a psychiatric evaluation performed by Dr. Chianese reveals that plaintiff never formed any close relationships either male or female *through high school* or since leaving high school.[20] In interviews with Dr. Gaberman, plaintiff stated he has had trouble with people "picking on him" [21] and that he believed he had trouble concentrating because of the "treatment he received in high school".[22] This information is further corroborated by a report from the supervising principal of plaintiff's high school which reveals (Exhibit 16, Tr., p. 97):

> "Being that Andrew suffered from psoriasis which is very unsightly, many of his classmates avoided him. *Andrew was withdrawn because of this.*" (Emphasis supplied.)

Plaintiff's casual statement at the hearing that he had friends while in high school, is not credible in light of his previous statements made during clinical psychiatric evaluation and supported by the observations contained in the report of the supervising principal of plaintiff's high school. It is apparent from the doctor's opinion that, if the true facts would have been taken into account, he would have testified that plaintiff's severe psychiatric problems began prior to his attaining 18 years of age.[23] The hearing examiner obviously took this into consideration in passing on the credibility of the doctor's testimony.

We believe the record as a whole, including the opinion of Dr. Benton, establishes that the plaintiff has met his burden of proof by presenting substantial evidence that he suffered from significant psychological and psychiatric problems prior to age 18, and the Appeals Council's finding to the contrary is not supported by substantial evidence.

In addition to his psychiatric impairment, plaintiff has also suffered from widespread psoriasis which afflicted him as early as age 14 and has had a significant effect in bringing about his psy-

19. Tr., p. 163.

20. Exhibit 31, Tr., p. 233.

21. Exhibit 31, Tr., p. 228.

22. Exhibit 31, Tr., p. 229.

23. The colloquy cited by the Appeals Council does not constitute Dr. Benton's entire opinion. In his opening remarks Dr. Benton stated (Tr., pp. 167–168):
"*In reviewing the record and listening to the testimony today leads me to the conclusion that Mr. Kosnosky has been handicapped from a date prior to attainment of age 18* and it would seem to me that his handicap has been getting progressively worse more over recent years. Various psychiatric diagnoses appear in the record. I do not believe there's basically any great discrepancies between these diagnoses. Diagnoses have been made at various times and this schizophrenic reaction, simple-type anxiety reaction, and personality disorder. There is no great discrepancy here although it might appear to be so on the surface because each of their diagnoses merely reflects one aspect of the problem that Mr. Kosnosky is having. There is no question that number one he is very severely emotionally constricted, there is no question that socially he is markedly handicapped, there is no question there are pressing and severe family problems that add to his difficulty of adjustment, there is no question that this young man who at one time had considerable potential that unfortunately circumstances have not permitted him to realize it. For example, there is evidence that some of the psychological tests that Mr. Kosnosky's intellectual capacity is perhaps considerable, considerably above average. However, he has never functioned anywhere near what his capacity has been. He has never shown any signs of being able to achieve in life, however, things that apparently he has been capable of achieving. So that there is no question that Mr. Kosnosky has been handicapped." (Emphasis supplied.)

chological and psychiatric problems. Both of these impairments existed prior to plaintiff attaining age 18, and the combination of these impairments has resulted in this particular plaintiff's inability to engage in substantial gainful activity since, and prior to, his attainment of age 18.

The Secretary's decision must be reversed because it is not supported by substantial evidence.

An appropriate order will be entered.